No. 48,683

Jimmie Frank Foster, Franklin R. Yurk, William L. Breier, Delbert E. Highman, *Appellants*, v. Raymond D. Maynard, et al., *Appellee.*

(565 P.2d 285)

Opinion filed June 11, 1977.

*Daniel J. Carroll*, of the law firm of Murray and Tillotson, Chartered, Leavenworth, argued the cause and was on the brief for appellant.

*Roger M. Theis*, assistant attorney general, argued the cause, and *Curt T. Schneider*, attorney general, and *Kenneth D. Doyle*, special assistant attorney general, were with him on the brief for appellee.

The opinion of the court was delivered by

Fatzer, C. J.: This is an appeal from the denial of relief sought under a writ of habeas corpus pursuant to K.S.A. 60-1501. Petitioners-appellants are inmates at Kansas State Penitentiary at

Lansing. On February 23, 1976, the appellants filed an amended petition for a writ of habeas corpus, pursuant to K.S.A. 60-1501, in the district court of Leavenworth County, alleging the deprivation of various constitutional and statutory rights and privileges while being confined in protective custody status in the Adjustment and Treatment (A and T) Building. Both sides presented evidence at a hearing held in the district court on March 11, 1976. On March 25, 1976, the district court rendered a memorandum opinion denying the appellants' prayers for relief and dissolving the writ of habeas corpus. Notice of appeal from that decision was timely filed, and this appeal followed.

The appellants are on protective custody status at their own request. Protective custody inmates are segregated from the general prison population. They are housed in the A and T Building which is designed to protect the occupants. The building has three wings. The north wing is occupied entirely by inmates on protective custody status. The south wing is occupied by inmates on administrative segregation status awaiting hearings for institutional violations. The east wing is occupied by inmates on disciplinary segregation status who are serving "jail time" as a result of convictions of institutional rule violations. Some inmates on protective custody status, including the appellants, are also on the east wing.

The crux of the appellants' position is that they are not receiving the same treatment as other protective custody inmates who are housed on the north wing. In their petition below, the appellants alleged they are denied many privileges which protective custody inmates on the north wing are allowed: the right to attend church, the privilege of listening to the radio, the privilege of earning money through institutional employment, adequate light to read by, the use of typewriters, and the privilege of having the same amount of exercise each day. The appellants further alleged they are allowed to spend less money per month in the canteen than are protective custody inmates on the north wing.

The evidence showed there are approximately forty protective custody inmates. There are twenty-one one-man cells and six four-man cells on the north wing. Because of past assault problems, only one man is housed in the larger cells. North wing inmates work in the prison laundry which is run entirely by protective custody inmates in the A and T Building. It is the only

available job for protective custody inmates. There are from twenty-three to twenty-eight job positions in the laundry. It is an important prison function, and selection of workers is done with care. Two of the appellants had previously worked in the laundry and had proved to be unsatisfactory workers because of their belligerent attitudes. The decision to place inmates on the east wing is based in part on past behavior. Satisfactory workers are kept on the north wing. Protective custody inmates are not placed on the east wing for disciplinary reasons. Inmates from the north and east wings are not allowed to mix. Commingling has resulted in past problems. They have different exercise periods and do not attend church together, but protective custody inmates on the east wing do have an exercise period and they may have religious leaders visit them. The evidence further showed there was no difference in lighting or in the amount of money protective custody inmates could spend in the canteen.

The district court concluded the evidence failed to establish the imprisonment of the appellants in the east wing of the A and T Building was illegal and a violation of due process or that it amounted to a violation of their right to equal protection of the law.

The appellants' first point on appeal is that their confinement in the east wing of the A and T Building is illegal. They contend they have suffered a loss of institutional privileges without being accorded a prior hearing in violation of the due process clause of the Fourteenth Amendment. We disagree.

The appellants' due process contention appears to be predicated on the view that retraction of their privileges occurred as a disciplinary measure imposed upon them by prison officials. However, the evidence showed that the decision to house prisoners on the east wing was merely an administrative classification decision made in the day-to-day operation and management of the penitentiary. The decision concerning the appellants' housing was made by their unit team. The unit team determined the appellants' aggressive attitude toward institutional staff and other inmates and their unsatisfactory history of institutional employment necessitated their being housed on the east wing. This administrative classification decision allowed the most efficient inmate workers to work in the laundry and removed a potentially disruptive influence upon the remaining protective

custody population. The decision was not imposed for discipli-
nary purposes and did not result in a reduction of privileges. The
district court found that there was no significant difference in
institutional privileges for inmates in protective custody status on
the east and north wings.

In *Levier v. State*, 209 Kan. 442, 497 P.2d 265, this court
recognized that prison officials are vested with wide discretion in
the discharge of their duties and that their decisions concerning
matters of internal management and operation of a state peniten-
tiary will not be disturbed unless clearly arbitrary or shocking to
the conscience. *See Breier v. Raines*, 221 Kan. 439, 559 P.2d 813;
*Morris v. Raines*, 220 Kan. 86, 551 P.2d 838.

These decisions are reinforced by the recent United States
Supreme Court decision of *Meachum v. Fano*, 427 U.S. 215, 49
L.Ed.2d 451, 96 S.Ct. 2532. There a state prisoner brought a civil
rights action under 42 U.S.C. Sec. 1983 contending his transfer
from one state prison to another with conditions of confinement
considerably more severe without a prior hearing violated his
right to due process of law under the Fourteenth Amendment.
The court stated:

". . . We reject at the outset the notion that *any* grievous loss visited upon a
person by the State is sufficient to invoke the procedural protections of the Due
Process Clause. . . . [T]he determining factor is the nature of the interest in-
volved rather than its weight.

"Similarly, we cannot agree that *any* change in the conditions of confinement
having a substantial adverse impact on the prisoner involved is sufficient to
invoke the protections of the Due Process Clause. The Due Process Clause by its
own force forbids the State from convicting any person of crime and depriving
him of his liberty without complying fully with the requirements of the Clause.
But given a valid conviction, the criminal defendant has been constitutionally
deprived of his liberty to the extent that the State may confine him and subject him
to the rules of its prison system so long as the conditions of confinement do not
otherwise violate the Constitution." 427 U.S. at 224.

. . . . . . . . . .

"A prisoner's behavior may precipitate a transfer; and absent such behavior,
perhaps transfer would not take place at all. But, as we have said, Massachusetts
prison officials have the discretion to transfer prisoners for any number of reasons.

. . . . . . . . . .

"Holding that arrangements like this are within reach of the procedural protec-
tions of the Due Process Clause would place the Clause astride the day-to-day
functioning of state prisons and involve the judiciary in issues and discretionary
decisions that are not the business of federal judges." 427 U.S. at 228-29.

The broad discretion of prison administrators concerning the

housing of inmates in protective custody was reaffirmed in *Crowe v. Leeke*, 540 F.2d 740 (4th Cir. 1976). That court stated:

". . . The placement of inmates who have sought protective custody classification and the number of inmates who may be safely assigned to a cell is a matter resting within the sound discretion of the prison administration." *Id.* at 742.

The classification decision of prison officials to house the appellants on the east wing because of the unavailability of space on the north wing and because of their aggressive behavior clearly constitutes a reasonable exercise of discretion aimed at promoting the welfare of the institution and the protective custody inmates. The determination implicated no constitutional right of the appellants. The classification of prisoners concerning housing and job assignments is necessary to the proper administration of a state prison and rests within the sound discretion of the prison administrator. Furthermore, no interest approaching the level of a fundamental right was deprived the appellants by their placement on the east wing of the A and T Building.

The appellants' second point on appeal is that the district court erred in finding their confinement on the east wing did not violate their right to equal protection of the law under the Constitutions of the United States and the State of Kansas.

The district court found the appellants had not been denied privileges available inmates on the north wing. But even assuming a lesser amount of privileges are available to the appellants, no equal protection violation is presented under the instant facts. The evidence showed there are more protective custody inmates than there are jobs available in the laundry or cells available on the north wing. Consequently, prison officials were required to exercise their discretion to properly allocate these positions and maximize the efficient and safe operation of the A and T facility. The equal protection clause cannot be deemed to preclude responsible administrative classification to further legitimate objectives. The decision of prison authorities in regard to where the appellants should be housed served the legitimate goals of protecting the welfare of the protective custody inmates and ensuring the efficient operation of the prison laundry by preventing intermingling of those inmates with demonstrated behavioral problems with the rest of the prison population.

*Morris v. Raines*, 220 Kan. 86, 551 P.2d 838, is an analogous case in which an equal protection challenge was denied. There it was said:

". . . There is no showing that any of the so-called discriminations are based on unreasonable or prohibited class distinctions or that they are other than reasonably necessary distinctions for the orderly administration of the prison and the welfare of the prisoners. . . . They simply do not rise to the level of unconstitutional discrimination." *Id.* at 87, 551 P.2d at 839.

We hold that in the instant case the conditions of confinement to which the appellants are subjected do not rise to the level of unconstitutional discrimination in violation of equal protection guarantees.

The appellants' third point on appeal is that the district court erred as a matter of law in finding habeas corpus is not a proper proceeding to raise the issue of crediting appellants' accounts with forced savings accrued under the provisions of K.S.A. 1974 Supp. 75-5211.

A "forced savings" procedure implemented in 1957 remained essentially unchanged until the enactment of K.S.A. 1975 Supp. 75-5211. (1957 Kan. Sess. Laws, Ch. 473, Sec. 1.) K.S.A. 1974 Supp. 75-5211 upon which the appellants rely was the last enactment providing for this forced savings procedure. Under this procedure, five cents per day of confinement was withheld from a convict's earnings to be paid him only upon release. The remainder of what he earned was credited to his account for his immediate use in such manner and for such purposes as were authorized by the warden. On and after July 1, 1975, the five cents per day was no longer withheld from an inmate's earnings. All of his earnings are now credited to his account for his immediate use, and upon his release, he may be provided with a gratuity of up to $250 dependent upon individual need. K.S.A. 1975 Supp. 75-5211.

Department of Corrections Administrative Procedure No. 134 was promulgated to effect the change in the law. It provides that every inmate who was incarcerated prior to July 1, 1975, is entitled to the full amount of his savings at the rate of five cents per day pursuant to law without any deductions. It also sets out guidelines for the determination of need which fixes the amount of the gratuity due an inmate upon his release. This amount is then reduced by the amount of accumulated forced savings due the inmate.

In the court below, the appellants argued Administrative Pro-

cedure No. 134 wrongly deprived them of their "forced savings" under former statutes. They argued the amount of their forced savings should be credited to their account for their immediate use and should not be subtracted from the gratuity due them upon release. The district court ruled that a habeas corpus action is not a proper proceeding to raise the issue of crediting the appellants' accounts with forced savings.

The appellants contend the district court's failure to reach the merits of their claim was error on the theory that the alleged wrongful retention of money and failure to immediately credit their accounts with the forced savings is a "condition of confinement" properly cognizable in a habeas corpus action. *Hamrick v. Hazelet*, 209 Kan. 383, 497 P.2d 273. They also contend that to require a separate action on the forced savings issue would cause unnecessary duplicity. In support of their contention, the appellants note K.S.A. 60-102 mandates that provisions of the code "shall be liberally construed to secure the just, speedy and inexpensive determination of every action or proceeding." They further note K.S.A. 60-1505(*d*) provides that the court entering judgment in a habeas corpus proceeding "may make such other orders as justice and equity . . . may require."

The appellee recognizes that the writ of habeas corpus may be utilized by an inmate to challenge the legality of the conditions of his confinement and to seek equitable relief therefrom (*Levier v. State*, supra; *Hamrick v. Hazelet*, supra), but argues that the use of the remedy does not extend to seeking monetary relief. The appellee notes that the appellants' claim seeks monetary relief in the form of the immediate crediting of their accounts with their prior savings for their present personal use. Therefore, the appellee contends the claim is not jurisdictionally cognizable under habeas corpus.

The appellee also argues that appellants' broad interpretation of K.S.A. 60-1505(*d*) is misplaced. The appellee contends the statutory provisions authorizing the court to make such orders "as justice and equity . . . require" merely confer the traditional power upon the court to employ its equitable powers in awarding appropriate relief in habeas corpus proceedings. Appellee notes a similar provision in 28 U.S.C. Sec. 2243 of the federal habeas corpus laws authorizing the court to "dispose of the matter as law and justice require" has never been interpreted to authorize monetary relief.

While equitable principles govern a habeas corpus proceeding (39 C.J.S. *Habeas Corpus* Sec. 6 [1976]), it is a legal, not an equitable, remedy. *Preiser v. Rodriguez*, 411 U.S. 475, 36 L.Ed.2d 439, 93 S.Ct. 1827. Habeas corpus is an extraordinary legal remedy, and it should not be used when relief may be obtained by ordinary procedure. 39 C.J.S. *Habeas Corpus* Sec. 6 (1976). Without question, habeas corpus is not an appropriate or an available remedy in federal courts for a state prisoner seeking damages. *Wolff v. McDonnell*, 418 U.S. 539, 41 L.Ed.2d 935, 94 S.Ct. 2963; *Preiser v. Rodriguez*, supra. Neither is it a proper remedy for presenting a prisoner's claim that his money has been wrongfully taken and retained by a penal institution. *Konigsberg v. Ciccone*, 285 F.Supp. 585 (W.D.Mo. 1968), *aff'd*, 417 F.2d 161 (8th Cir. 1969), *cert. denied*, 397 U.S. 963, 25 L.Ed.2d 255, 90 S.Ct. 996 (1970).

In our cases recognizing that "conditions of confinement" are cognizable in a habeas corpus action, the conditions challenged were mistreatment in the context of living conditions and disciplinary measures. *Levier v. State*, supra; *Hamrick v. Hazelet*, supra. The same is true of the United States Supreme Court cases recognizing challenges to conditions of confinement are jurisdictionally cognizable in a federal habeas corpus action. *Wilwording v. Swenson*, 404 U.S. 249, 30 L.Ed.2d 418, 92 S.Ct. 407; *Johnson v. Avery*, 393 U.S. 483, 21 L.Ed.2d 718, 89 S.Ct. 747. We are not disposed to expand "conditions of confinement" cognizable under habeas corpus to encompass the instant claim alleging wrongful retention of money. We therefore hold the district court correctly ruled that habeas corpus was not a proper proceeding to raise the issue of crediting the appellants' accounts with forced savings accrued under provisions of K.S.A. 1974 Supp. 75-5211. Because this action is not jurisdictionally cognizable under habeas corpus, we do not reach the merits of appellants' claim.

The appellants' final contention is that the district court erred in not ordering that employment opportunities be provided them in accordance with K.S.A. 1975 Supp. 75-5211. The appellants read this statute as mandating the Secretary of Corrections to provide inmates with institutional employment.

K.S.A. 1975 Supp. 75-5211 provides in pertinent part:

". . . The secretary of corrections shall provide employment opportunities,

work experiences, educational or vocational training *for all inmates capable of benefiting therefrom.*" (emphasis added)

The appellee contends, and we agree, that the statute gives the Secretary some discretion. The statutory discretion conferred upon the Secretary accords with the legislative intent to leave the internal management and operation of the state correctional system to the sound discretion of the Secretary. The only possibility of employment for protective custody inmates in A and T Building is work in the laundry. There are more protective custody inmates than jobs. Inmates with the best work records and behavior are employed in the laundry. We do not sit to second guess the apparent determination by prison officials that the appellants would not benefit from employment in the laundry because of their lack of desire to properly perform the duties and because of their disruptive effect upon other inmates.

The judgment is affirmed.