(585 P.2d 620)
No. 49,037

Donald O'Neal Griffin, *Appellant,* v. R. R. Raines and Raymond E. Maynard, *Appellees.*

Petition for review denied December 4, 1978.

Opinion filed October 27, 1978.

*Michael Crow,* of Leavenworth, for appellant.

*Roger N. Walter,* assistant attorney general, and *Curt T. Schneider,* attorney general, for appellees.

Before Parks, P.J., Abbott and Meyer, JJ.

Meyer, J.: Donald O'Neal Griffin (appellant), an inmate of Kansas State Penitentiary at Lansing, Kansas, petitioned the District Court of Leavenworth County, Kansas, for a writ of habeas corpus. He alleged that he did not receive a fair hearing before the penitentiary hearing board, that his punishment should be classified as "cruel and unusual," and that the penitentiary board violated his fundamental rights of equal protection and due process of law. His petition for habeas corpus was dismissed, and this appeal followed.

This case arises out of an unusual set of circumstances. Appellant, at some undisclosed time prior to the incident giving rise to this cause of action, requested and was granted protective custody. All prisoners who request protective custody are housed in the A and T building. Those prisoners who are housed in the east wing are denied certain privileges enjoyed by prisoners residing in the north wing. The most substantial of these is that prisoners granted work privileges are chosen from the north wing. If a prisoner loses his job he is transferred to the east wing.

The Kansas Supreme Court recently stated in *Foster v. Maynard,* 222 Kan. 506, 508-10, 565 P.2d 285 (1977) as follows:

"The appellants' first point on appeal is that their confinement in the east wing of the A and T Building is illegal. They contend they have suffered a loss of institutional privileges without being accorded a prior hearing in violation of the due process clause of the Fourteenth Amendment. We disagree.

". . . This administrative classification decision allowed the most efficient inmate workers to work in the laundry and removed a potentially disruptive influence upon the remaining protective custody population.

. . . . .

". . . The classification decision of prison officials to house the appellants

on the east wing because of the unavailability of space on the north wing and because of their aggressive behavior clearly constitutes a reasonable exercise of discretion . . . . The determination implicated no constitutional right of the appellants. The classification of prisoners concerning housing and job assignments is necessary to the proper administration of a state prison and rests within the sound discretion of the prison administrator."

*Foster* makes it clear that whether a prisoner requesting protective custody is housed in the north or the east wing is an administrative decision within the sound discretion of the prison administrator and will not be interfered with by the courts. It is also clear that a prisoner who has requested protective custody may remove himself from protective custody at any time.

In the instant case appellant was involved in a fight at his place of employment in the prison, resulting in disciplinary proceedings being brought against him. Under the disciplinary regulations the prison authorities were authorized to sentence appellant to a segregation period of 7 to 15 days and to deduct up to 30 days of his good time.

The prison authorities did not distinguish which resulting actions taken in regard to appellant were administrative and which were disciplinary. No disciplinary segregation was imposed, but appellant was removed from the laundry work detail and pay status for thirty days. He was transferred to the east wing, but the order noted he could earn back his laundry status at the discretion of the officer in charge of the A and T Building.

The Kansas court in *Foster,* 222 Kan. at 509, relied on *Meachum v. Fano,* 427 U.S. 215, 49 L.Ed.2d 451, 96 S.Ct. 2532 (1976), a case which involved a prisoner's civil rights relative to his transfer from one state prison to a prison with considerably more severe conditions of confinement, without a prior hearing. In *Meachum,* the high court stated:

"We reject at the outset the notion that *any* grievous loss visited upon a person by the State is sufficient to invoke the procedural protections of the Due Process Clause. . . .

"Similarly, we cannot agree that *any* change in the conditions of confinement having a substantial adverse impact on the prisoner involved is sufficient to invoke the protections of the Due Process Clause. The Due Process Clause by its own force forbids the State from convicting any person of crime and depriving him of his liberty without complying fully with the requirements of the Clause. But given a valid conviction, the criminal defendant has been constitutionally deprived of his liberty to the extent that the State may confine him and subject him to the rules of its prison system so long as the conditions of confinement do not otherwise violate the Constitution." 427 U.S. at 224.

Appellant's main contention seems to be that once prison officials undertake a disciplinary proceeding, they are precluded from taking any administrative action concerning the prisoner. However, we are of the opinion that what can be done administratively, without any hearing at all, can be done by procedures which afford a hearing. The disciplinary rules and regulations in effect at the time of the hearing allowed for disciplinary segregation of 7-15 days, and a good time forfeiture of up to 30 days. Appellant, however, was not sentenced to punitive segregation. He was free to leave the disciplinary section of the A and T Building at any time he might choose, simply by withdrawing his name from the protective list. We view the order as one of form rather than of substance. All the parties agree that, had the order been classified as administrative, the action taken would clearly have been within the authority of the prison administration.

The existence of written guidelines for disciplinary proceedings does not mandate that prison authorities must elect *either* administrative procedures *or* disciplinary procedures. Fighting in prison is a serious infraction that could easily lead to death or serious injury of inmates or personnel. To hold that prison authorities, by choosing to punish an inmate under the disciplinary procedures, thereby lose their authority to transfer him, administratively, from his job in the prison, or to a different location therein, would be to unduly restrict the prison authorities.

We conclude that the action of the disciplinary board was well within their authority as determined in *Foster* and *Meachum.*

Appellant does not contest the proceedings *per se* except to contend one member of the three-man disciplinary board was so biased as to deny him a fair hearing, in violation of the due process clause. First, we note that the appellant did not suffer any loss of privileges or rights which would require a prior hearing. Appellant testified that Officer Lynch was hostile toward him because of his prodigious filing of writs against prison officials. The only other evidence of Officer Lynch's alleged prejudice was the hearsay testimony of another inmate. The trial court is the sole judge of the credibility of witnesses and the weight to be given the evidence presented. *Parish v. Parish,* 220 Kan. 131, 551 P.2d 792 (1976). Absent a clear abuse of that discretion, the trial court's determination will stand. We find no such abuse of discretion in the instant case.

Appellant argues there was disparity in privileges given to him and to other inmates, and that this discrimination violated his constitutional rights. This contention lacks merit. The privileges, which involved location of imprisonment and the absence of work privileges, do not rise to constitutional proportions. The Kansas Supreme Court dealt with a very similar situation in *Foster.*

Appellant also complains that because the appellees failed to present direct evidence, the court was obliged to accept his evidence as a *prima facie* case. Appellant's argument overlooks the presumption that operates in favor of the disciplinary board proceeding. Until the contrary is shown, it is presumed that the board operated properly. 29 Am. Jur. 2d, Evidence §§ 171-172. More importantly, however, appellant did not necessarily carry his burden of proof in that the trial court was not obliged to believe his testimony. See *Withrow v. Larkin,* 421 U.S. 35, 43 L.Ed.2d 712, 95 S.Ct. 1456 (1975).

While the foregoing reasoning and citations are ample to sustain the action of the trial court, we deem this a proper case to state the general rule that courts normally do not engage in useless acts. If we were to reverse the case because of the state's taking administrative action in conjunction with a disciplinary proceeding, the prison authorities could hand appellant our decision and immediately thereafter hand him an administrative order transferring him to the east wing and removing him from his job at the laundry. The only way to avoid such a result would be for this court to order the prison authorities to restore appellant to his job in the laundry and to the prison's general population. To order reinstatement of appellant's job would be a grossly unjustified interference with prison authorities, and to release appellant from protective custody·would be contrary to appellant's own wishes.

Affirmed.

PARKS, J., dissenting: Are agencies bound by their own rules? Does the imposition of an open-ended sentence by a prison disciplinary board constitute cruel and unusual punishment? In my view, both questions must be answered affirmatively and therefore I dissent from the majority's opinion.

While the merits of the "fighting" charge against petitioner Griffin are not in issue, the validity of the sanctions imposed for that infraction is. The undisputed facts are that when petitioner was found guilty of major misconduct by the disciplinary board at Kansas State Penitentiary, there were in effect rules and regulations which lawfully established that board's powers. In ignoring those procedures, the board did not impose the outlined sanctions but chose instead to impose a specially created indefinite sentence. The petitioner served eight months in disciplinary segregation as of the date that his brief was filed in this court, and is apparently still being retained in that status.

For clarity, both sentences are set out below:

Authorized sentence: Seven to 15 days disciplinary segregation and forfeiture of 30 days good time. Review required after the minimum sentence has been served. (Kansas Penal System *Policy, Guidelines and Inmate Disciplinary Procedures,* p. 21, effective August 1, 1972, since amended.)

Sentence imposed: "Remove from Laundry work detail and pay status for 30 days. Transfer to East Wing (South P.C.) Earn back laundry status at discretion of OIC, A&T."

The fact that the action taken by the board could have been accomplished administratively had it not been done as a punitive measure has no bearing on this case. The decisions in *Foster* and *Meachum* cited by the majority are distinguishable for the reason that the contested decisions did not involve disciplinary actions. *Foster v. Maynard,* 222 Kan. 506, 509, 565 P.2d 285 (1977); *Meachum v. Fano,* 427 U.S. 215, 216-17, 49 L.Ed.2d 451, 96 S.Ct. 2532 (1976).

Inmates in "disciplinary segregation" are not there due to administrative reassignments, but are serving a sentence meted out by the institution disciplinary board and approved by the warden or superintendent. (Kansas Penal System *Policy, Guidelines and Inmate Disciplinary Procedures,* p. 8.) Therefore, I am not persuaded by the majority's reasoning that what can be done administratively, with no hearing at all, can be done by procedures which afford a hearing. No claim has been advanced here that the petitioner arrived in disciplinary segregation via routine administrative procedure. Once prison officials embark upon the path of disciplinary proceedings, they are then bound by their governing rules and regulations.

The rule is that an administrative agency may not violate or ignore its own regulations, and where it fails to follow the rules which it has promulgated, its orders are unlawful. This principle controls as long as the rules made are within the agency's competence to make, and those rules do not contravene or nullify controlling statutes. *Kansas Commission on Civil Rights v. City of Topeka Street Department,* 212 Kan. 398, Syl. 1 and 2, 511 P.2d 253, *cert. denied* 414 U.S. 1066, 38 L.Ed.2d 470, 94 S.Ct. 573 (1973); *Moore v. OSP,* 16 Or. App. 536, 519 P.2d 389 (1974); *Vitarelli v. Seaton,* 359 U.S. 535, 3 L.Ed.2d 1012, 79 S.Ct. 968 (1959); *Clairborne v. Coffeyville Memorial Hospital,* 212 Kan. 315, 317, 510 P.2d 1200 (1973) and cases cited therein.

In addressing this subject, the New Jersey legislature and courts have required, as Kansas does, that all inmates be provided a copy of the formally promulgated and published rules and regulations governing the rights, privileges, duties and obligations of the inmate population confined in state penal and correctional institutions. Among other things, such publications are required to set forth authorized sanctions for various classes of violations and to detail the procedures for imposing summary and administrative punishment. New Jersey law specifically prohibits the imposition of unauthorized sanctions by saying, "No punishment may be meted out other than of the type and in the manner prescribed by such rules and regulations." *Avant v. Clifford,* 67 N.J. 496, 512-13, 341 A.2d 629 (1975) and authority cited therein.

The parallel Kansas statute is K.S.A. 75-5256 (since amended):

"[A]ll rules or orders for the government of the correctional institution and the enforcement of discipline therein made by the secretary or director shall be published and made available to all inmates. Every such rule or order promulgated by the director shall be effective until rescinded or amended by him or her or until disapproved by the secretary."

According to the published rules governing the Kansas State Penitentiary, all Class II offenses, such as the one with which the petitioner was charged, are required to be heard and acted upon by the prison disciplinary board. The rules limit the board's actions to using all or part of the published sentence or to suspending all or part of it. Thus, when the board ignored the prescribed sentence and created instead a special sentence for the

petitioner—sentencing him to an indefinite period of punitive segregation on the east wing of the A&T building—it exceeded its authority. Moreover, the grievous loss suffered was compounded when the board failed to review petitioner's sentence, which it was required to do, after he had served the minimum sentence prescribed for the infraction.

I am unable to agree with the majority's views that the disciplinary board's decision was a hybrid administrative/disciplinary decision and that the prison authorities merely failed to distinguish which resulting actions taken in regard to appellant were administrative and which were disciplinary. In *Foster,* 222 Kan. at 508, our Supreme Court expressly stated, "Protective custody inmates are not placed on the east wing for disciplinary reasons." The action of the disciplinary board in this case violates that premise: petitioner's assignment to the east wing was indeed a sentence imposed for the violation of institutional rules.

I would reverse the trial court's decision and remand with directions that the petitioner be reassigned housing on the north wing of the A&T building and that the good time forfeited, if any, be reinstated. Nothing in such decision should be construed as limiting the prison administration's authority to make future housing assignments when necessary for administrative/logistics purposes. I would hold that in disregarding its own rules, the board acted unlawfully.