NOT DESIGNATED FOR PUBLICATION

No. 126,020

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

MIKE C. MATSON,
*Appellant*,

v.

STATE OF KANSAS and PAUL SNYDER, WARDEN, et al.,
*Appellees*.

MEMORANDUM OPINION

Appeal from Cowley District Court; CHRISTOPHER SMITH, judge. Submitted without oral argument. Opinion filed September 6, 2024. Reversed and remanded with directions.

*Mike C. Matson*, appellant pro se.

*Fred W. Phelps, Jr*., deputy chief legal counsel, of Kansas Department of Corrections, for appellees.

Before ATCHESON, P.J., ISHERWOOD and HURST, JJ.

HURST, J.: After being incarcerated for almost 30 years, Mike C. Matson was denied parole which led to him filing a grievance with the Winfield Correctional Facility (WCF) in which he claimed that prison officials interfered with and hindered his parole process. Matson alleges that shortly after filing his grievance, prison officials retaliatorily removed his minimum-security status and transferred him to a higher security facility. Thereafter, he filed the present suit claiming that the State and various prison personnel violated his constitutional rights to freedom of speech under 42 U.S.C. § 1983 and negligently supervised, retained, hired, and trained personnel causing him damages from

1

a wrongful transfer in violation of the Kansas Tort Claims Act (KTCA). The district court dismissed both of Matson's claims finding that the defendants were immune from liability under the KTCA. Matson appeals.

As Matson correctly argues, the district court erroneously dismissed both of his claims. The district court failed to address Matson's federal § 1983 claim and wrongly found that the KTCA police protection immunity shielded the defendants from liability for his negligence claim. Moreover, at this early stage of litigation, the district court lacked sufficient information to find that the discretionary authority exception immunized defendants from KTCA liability. Finally, the prison mailbox rule makes Matson's response to defendants' motion to dismiss timely. The district court's dismissal of Matson's § 1983 and KTCA claims is reversed and remanded with instructions to accept Matson's response to plaintiff's motion to dismiss as timely.

FACTUAL AND PROCEDURAL BACKGROUND

Mike C. Matson is currently incarcerated following his conviction for the first-degree murder and second-degree murder of two people in 1992. *State v. Matson*, 260 Kan. 366, 367-69, 921 P.2d 790 (1996). During his incarceration, Matson has continued to exercise his legal rights through various pro se actions. See, e.g., *Matson v. Kansas Dept. of Corrections*, 301 Kan. 654, 346 P.3d 327 (2015); *Matson v. State*, No. 123,600, 2021 WL 6068711 (Kan. App. 2021) (unpublished opinion) (retaliatory prison transfer claim under 42 U.S.C. § 1983); *Matson v. Electrex Inc.*, No. 23-1075-JWB-GEB, 2023 WL 5224841 (D. Kan. 2023) (unpublished opinion); *Matson v. Kansas*, No. 11-3192-SAC, 2012 WL 1080485 (D. Kan. 2012) (unpublished opinion).

In this matter, Matson petitioned the Cowley County District Court for damages against the State, the WCF Warden, and several personnel at WCF, alleging the defendants violated his constitutional right to free speech in violation of 42 U.S.C. § 1983

2

and negligently supervised, retained, hired, and trained personnel in violation of the Kansas Tort Claims Act (KTCA), K.S.A. 75-6101 et seq., causing him damages from wrongful transfer. Matson asserted that after being denied parole, on November 23, 2020, he submitted a grievance stating he was "denied basic rights in my parole process." Matson's grievance alleged that he was denied a copy of his parole decision and denied the right to have an attorney present for his parole hearing. According to Matson's petition, the day after filing the grievance, WCF employees retaliated against him by handcuffing and taking him to segregation; revoking his minimum custody; and transferring him to Hutchinson Correctional Facility, which he alleged was a maximum-security prison.

On June 22, 2021, the defendants answered and asserted affirmative defenses including absolute immunity, qualified immunity, failure to state a claim upon which relief may be granted, and immunity under the KTCA. They reasserted those defenses in a November 2021 amended answer and thereafter the parties engaged in various discovery disputes including motions to compel and related hearings. On August 30, 2022, through new counsel, the defendants filed a motion to dismiss and argued immunity from Matson's claims under the KTCA, K.S.A. 75-6104(n) and (e), and immunity from his federal claims. They also argued that Matson's petition failed to provide a short and plain statement of claims as required by K.S.A. 60-208.

On September 14, 2022, the district court received Matson's response to the defendants' motion to dismiss. The response stated that it was executed on September 9, 2022.

On September 14, 2022, the district court granted the defendants' motion to dismiss. The court found that (1) Matson failed to reply to defendants' motion to dismiss within seven days as required by Kansas Supreme Court Rule 133(b) and (2) the defendants were immune from liability under the "'Police Protection immunity'" and

3

"'Discretionary Immunity'" of the KTCA. The district court did not separately address the defendants' alleged immunity from liability for Matson's § 1983 federal claim.

On September 30, 2022, the district court received Matson's motion to alter or amend its order granting the defendants' motion to dismiss and his objections to its findings of fact and conclusions of law. Matson provided documentation that he hand delivered his response to the motion to dismiss to prison officials on Friday, September 9, 2022, and it was placed in the mail on Monday, September 12, 2022. Matson argued that his response to the motion to dismiss was timely under the prison mailbox rule. Matson alternatively argued that defendants' motion to dismiss should be considered a dispositive motion and that he was within that filing deadline.

The district court denied Matson's motion to alter or amend judgment and his objections to its findings and conclusions. Matson appealed the district court's dismissal of his claims and denial of his motion to alter or amend and denial of his objections to the district court's findings and conclusions.

DISCUSSION

On appeal, Matson asserts that the prison mailbox rule should apply to his case and, therefore, his response to the defendants' motion to dismiss was timely filed. He also argues that the defendants are not entitled to immunity from his state law claims under the KTCA and that even if KTCA immunity applied, it would not apply to his federal § 1983 claim. For the reasons stated below, this court finds Matson's arguments availing.

I. THE DISTRICT COURT ERRED IN FINDING MATSON'S RESPONSE TO THE DEFENDANTS' MOTION TO DISMISS UNTIMELY

4

Matson claims the district court incorrectly calculated the filing deadline because it failed to apply the prison mailbox rule, and thus erred in finding that his response to the defendants' motion to dismiss was untimely. Matson also argues that the district court applied the wrong filing deadline for his motion to alter or amend and his objections to its findings and conclusions. This court exercises unlimited review over questions of law, including statutes and Supreme Court Rules related to filing deadlines. *Nauheim v. City of Topeka*, 309 Kan. 145, 149, 432 P.3d 647 (2019); *Dawson v. BNSF Railway Co.*, 309 Kan. 446, 451, 437 P.3d 929 (2019).

Defendants filed their motion to dismiss on August 30, 2022, and certified that a copy was sent to Matson on the same date. Service of the motion was completed upon mailing, which triggered Matson's right to respond. See K.S.A. 2023 Supp. 60-205(b)(2)(C). Pursuant to Supreme Court Rule 133(b) (2024 Kan. S. Ct. R. at 214), "the response must be filed no later than 7 days after service of the motion or as otherwise provided by the court." However, because the defendants served Matson by mail, Matson was entitled to 3 additional days to respond, which extended his response time to 10 days. K.S.A. 2023 Supp. 60-206(d). Therefore, Matson was required to file his response to the defendants' motion to dismiss by Friday, September 9, 2022, which Matson asserts he accomplished by delivering his response to prison officials on that date.

The United States Supreme Court has held that a presently incarcerated inmate engaging in pro se litigation suffers a unique set of circumstances making it more difficult to adhere to filing deadlines. See *Houston v. Lack*, 487 U.S. 266, 271, 108 S. Ct. 2379, 101 L. Ed. 2d 245 (1988). For example, incarcerated litigants proceeding pro se often lack access to computers, email, and filing systems and have little control over the timing of their mailings. In *Houston*, the Court held that certain filings by incarcerated pro se litigants are deemed filed on the date delivered to prison officials—overcoming some of the hurdles to timely filing. 487 U.S. at 270-71. The numerous reasons the Court in *Houston* identified for why incarcerated pro se litigants have difficulty timely filing in

5

habeas corpus cases are applicable to Matson's response to the defendants' motion to dismiss in this civil litigation. See *Houston*, 487 U.S. at 270-71. Just as the Court explained in *Houston,* Matson could not travel to the courthouse to file his document with the clerk, had no attorney for that purpose, and had to rely on prison officials to act without delay in filing his response. See 487 U.S. at 270-71.

Kansas appellate courts have applied this same prison mailbox rule to various types of civil and criminal litigation and filings. See, e.g., *Taylor v. McKune*, 25 Kan. App. 2d 283, 287-88, 962 P.2d 566 (1998) (applying the federal prison mailbox rule to K.S.A. 60-1501 petitions); see also *Sauls v. McKune*, 45 Kan. App. 2d 915, 916, 260 P.3d 95 (2011) ("[U]nder the prison mailbox rule, a habeas petition is considered filed when it is delivered to prison authorities for mailing—not on the date it is eventually filed with the court clerk—since those prison authorities control what happens after the paper is delivered to them."); *Kansas Dept. of Revenue v. Fletcher*, No. 111,631, 2015 WL 3632318, at *2 (Kan. App. 2015) (unpublished opinion) (applying the prison mailbox rule described in *Sauls* to inmate's appeal from denial of motion for relief from judgment under K.S.A. 60-260 in civil matter); *State v. Dillingham*, No. 99,189, 2008 WL 5428180, at *2-3 (Kan. App. 2008) (unpublished opinion) (applying the federal prison mailbox rule to an appeal from denial of a motion to withdraw plea); *Redford v. State*, No. 94,138, 2006 WL 1816320, at *3 (Kan. App. 2006) (unpublished opinion) (applying the federal prison mailbox rule to K.S.A. 60-1507 motions). This court finds no reason to restrict the applicability of the prison mailbox rule to prevent its use here, and finds that the district court should have applied the prison mailbox rule to Matson's response to the defendants' motion to dismiss and Matson's motion to alter or amend the judgment.

Matson's response to the defendants' motion to dismiss certified that he hand delivered it to prison officials on September 9, 2022. Further, in his motion to alter or amend judgment, Matson provided a copy of his account withdrawal request showing that he signed the form to pay for postage on September 9, 2022, and that it was received

6

in the prison mailroom on September 12, 2022. When applying the prison mailbox rule, Matson's response to defendants' motion to dismiss was timely.

Matson hand delivered his motion to alter or amend judgment and his motion to amend or make additional findings to a prison official on September 26, 2022, and the district court received them on September 30, 2022. In its order denying Matson's motions, the court erroneously concluded that "K.S.A. 60-259(f) states such motions are to be filed no later than 10 days after entry of judgment," which was entered on September 14, 2022.

However, K.S.A. 2023 Supp. 60-259(f) provides that "[a] motion to alter or amend a judgment must be filed no later than 28 days after the entry of judgment." This means that the district court made an error of law in applying the incorrect filing deadline. Matson's motions were timely. See K.S.A. 2023 Supp. 60-259(f); K.S.A. 2023 Supp. 60-252(b). Even so, the district court addressed Matson's arguments in its order denying Matson's motions and found them unpersuasive. Given the ultimate findings in this case, there is no further action necessary regarding Matson's motion to alter or amend or his objections to the court's findings and conclusions.

II.    THE DISTRICT COURT ERRED IN DISMISSING MATSON'S CLAIMS

Matson alleged the defendants deprived him of his First Amendment rights under the United States Constitution in violation of 42 U.S.C. § 1983 and that the State and WCF Warden negligently supervised, retained, hired, and trained personnel in violation of the KTCA. The defendants argued that they were immune from suit under both § 1983 and the KTCA. The district court dismissed both of Matson's claims but only addressed the defendants' immunity under the KTCA. On appeal, Matson convincingly argues that the KTCA immunity did not apply to his federal § 1983 claim and that the defendants failed to establish immunity for his KTCA claim.

7

A. *The district court failed to address whether the defendants established qualified immunity supporting dismissal of Matson's § 1983 claim.*

The district court dismissed Matson's KTCA claim and his federal § 1983 claim applying KTCA immunity. The district court's order dismissing Matson's claims explains what the district court considered and the basis for its decision, stating its "judicial skepticism toward a Motion to Dismiss" but determined that Matson failed to timely respond to the motion to dismiss within seven days and "the Defendants, the KDOC and individual employees of KDOC, are immune from this suit under both the 'Police Protection Immunity' and the 'Discretionary Immunity' as found in the Kansas Tort Claims Act." The district court then summarized its decision stating that, "the Defendants are entitled to a dismissal based upon the two previously stated reasons. The Plaintiff failed to timely respond to the Defendant[s'] Motion to Dismiss; and the Defendants are immune from suit in the instant matter." The court left no doubt about the basis for its decision.

On appeal, the defendants argue that Matson's federal § 1983 claim should have been dismissed for failure to adequately plead. However, that was not the basis for the district court's decision, so the defendants essentially ask this court to find that dismissal was appropriate because the district court was right for the wrong reason. See *Rose v. Via Christi Health System, Inc.*, 279 Kan. 523, 525, 113 P.3d 241 (2005) ("If a trial court reaches the right result, its decision will be upheld even though the trial court relied upon the wrong ground or assigned erroneous reasons for its decision."). This court declines to make such a finding. The district court accurately set forth the standard for notice pleading in Kansas, which generally requires merely a "short and plain statement of the claim showing that the pleader is entitled to relief . . . and . . . a demand for the relief." K.S.A. 2023 Supp. 60-208(a). Moreover, in Kansas the petition does not require a detailed legal theory of relief and "'the petition is not intended to govern the entire course

of the case.'" *Williams v. C-U-Out Bail Bonds*, 310 Kan. 775, 784, 450 P.3d 330 (2019) (quoting *Berry v. National Medical Services, Inc.*, 292 Kan. 917, 918, 257 P.3d 287 [2011]). Dismissal for failure to state a claim—as the defendants seek on appeal— requires the court to find that when all the facts are resolved in favor of the plaintiff the "allegations in the petition clearly demonstrate that the plaintiff does not have a claim." 310 Kan. at 784. The district court did not make such a finding and actually appears to have found otherwise. This court agrees that Matson's petition meets the minimum requirements for stating a claim by adequately providing notice to the defendants of his claims, including the factual basis and his requested relief.

The defendants also seek dismissal of Matson's § 1983 claim asserting qualified immunity—which they argued before the district court. This qualified immunity protects government officials "'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Leverington v. City of Colorado Springs*, 643 F.3d 719, 732 (10th Cir. 2011). When a defendant raises qualified immunity in a motion to dismiss, the court must consider whether (1) the plaintiff alleged facts supporting a constitutional violation; and (2) that right was clearly established at the time of the defendant's alleged misconduct. 643 F.3d at 732. Thus, the district court was first required to determine whether Matson had a clearly established constitutional right to file his grievance. See *Reichle v. Howards*, 566 U.S. 658, 664, 132 S. Ct. 2088, 182 L. Ed. 2d 985 (2012) (A clearly established right is one for which the "'existing precedent must have placed the statutory or constitutional question beyond debate.'"); see also *Gee v. Pacheco*, 627 F.3d 1178, 1189 (10th Cir. 2010) (finding that prisoners have a constitutionally protected right to file grievances). After establishing whether Matson had a constitutionally protected right, the district court was required to determine whether Matson's petition sufficiently alleged a violation of that right. See *Shero v. City of Grove, Okl.*, 510 F.3d 1196, 1203 (10th Cir. 2007) (stating the standard for establishing a § 1983 violation); *Frazier v. Dubois*, 922 F.2d 560, 561-62 (10th Cir. 1991) ("[P]rison officials do not have the

9

discretion to punish an inmate for exercising his first amendment rights by transferring him to a different institution."). The district court failed to perform this analysis and thus erroneously dismissed Matson's § 1983 claim.

B. *The defendants failed to establish immunity under the KTCA supporting dismissal of Matson's negligence claim.*

Matson alleged the State and the WCF Warden breached their duty to properly supervise, retain, hire, and train employees resulting in him being wrongly transferred to a less desirable location in retaliation for filing a grievance. Under the KTCA:

"[E]ach governmental entity shall be liable for damages caused by the negligent or wrongful act or omission of any of its employees while acting within the scope of their employment under circumstances where the governmental entity, if a private person, would be liable under the laws of this state." K.S.A. 75-6103(a).

The State as a governmental entity and the Warden—as an employee of a governmental entity—are both subject to liability under the KTCA. See K.S.A. 75-6103(a); K.S.A. 75-6102(d). Under the KTCA, the general rule is liability and immunity is an exception to that general rule. Therefore, those arguing for immunity carry the burden of demonstrating such. *Thomas v. Board of Shawnee County Comm'rs*, 293 Kan. 208, 233, 262 P.3d 336 (2011).

The State and the Warden argue that both the police protection immunity and discretionary function immunity shield them from liability for Matson's claims. The police protection immunity provides that "[a] governmental entity or an employee acting within the scope of the employee's employment shall not be liable for damages resulting from . . . *failure to provide, or the method of providing, police or fire protection.*" (Emphasis added.) K.S.A. 75-6104(n). The Kansas Supreme Court has held that "[t]here

10

is no question that penal officials and employees have the powers of law enforcement officers when such powers are necessary for the performance of their duties" and when housing prison inmates "the State's duty could be classified as custodial and as providing police protection for the benefit of all Kansans." *Cansler v. State*, 234 Kan. 554, 571-72, 675 P.2d 57 (1984); see also *Keiswetter v. State*, 304 Kan. 362, 369, 373 P.3d 803 (2016) ("[T]he KTCA's police protection exception can apply to correctional facilities and their supervisory personnel."). The defendants argue that the classification of Matson's security status and decision to transfer him to a different facility were activities within the police protection immunity.

In *Keiswetter*, an inmate escaped and assaulted an elderly woman who later died, and the woman's decedent accused the State of negligent supervision of the inmate. The court explained that Keiswetter's claim fell under the police protection exception to liability "because it invokes the State's 'failure to provide, or the method of providing, police . . . protection.'" 304 Kan. at 372 (quoting K.S.A. 2015 Supp. 75-6104[n]). The act of moving prisoners between penal institutions for court dates implicates the police protection activity of "keeping apart from the rest of the population those convicted felony offenders whose actions have been and perhaps promise to be dangerous and inimical to society." *Cansler*, 234 Kan. at 571-72. The immunity applies to how the governmental entity decides to provide police protection, but it is not an absolute immunity to all actions within a penal institution or involving prisoners. See, e.g., *Jackson v. City of Kansas City*, 235 Kan. 278, 292, 680 P.2d 877 (1984) (finding no immunity for negligence allegations against a fire department that are unrelated to fire protection operations or activities).

Here, unlike the allegations in *Keiswetter* and *Cansler*, no one has accused the defendants of failing to protect society from Matson. See *Keiswetter*, 304 Kan. 362; *Cansler*, 234 Kan. 554. Rather, Matson alleges that the State and the Warden negligently supervised, retained, hired, and trained employees who violated his constitutional rights

11

causing him damages. Matson does not accuse the State or the Warden of failing to properly exercise their police protection activities. As the court explained in *Jackson*, "[s]hould firemen negligently go to the wrong house and chop a hole in the roof thereof, we do not believe the city has immunity therefor on the basis the negligent act was a part of the method of fire protection." 235 Kan. at 292. The defendants failed to show that Matson's claims of liability relate to the State's police protection activities of housing or protecting society from dangerous individuals. The police protection exception to liability under the KTCA does not shield the State or the Warden from liability for Matson's claims for negligent supervision, retention, hiring, or training of employees causing them to violate his First Amendment rights to free speech. Defendants have not shown how ensuring that employees do not violate inmates' First Amendment rights involves the State's police protection activity.

As an alternative or perhaps in addition to the police protection immunity, the defendants argued—and the district court agreed—that classifying inmates' security level and inmate housing decisions are a discretionary function entitling the defendants to immunity under the KTCA. The discretionary function exception provides immunity from liability under the KTCA for governmental entities and employees from

> "any claim based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a governmental entity or employee, whether or not the discretion is abused and regardless of the level of discretion involved." K.S.A. 75-6104(a)(5).

Kansas courts look to the nature and quality of the discretion exercised to determine whether a particular function is considered discretionary. *Soto v. City of Bonner Springs*, 291 Kan. 73, 79, 238 P.3d 278 (2010). However, "[t]he mere application of any judgment is not the hallmark of the exception." 291 Kan. at 79. The discretionary function exception to liability under the KTCA is inapplicable when there is a "'clearly

12

defined mandatory duty or guideline'" arising from agency directives, caselaw, or statutes. *Thomas*, 293 Kan. at 235. Rather, "[t]he more a judgment involves the making of policy[,] the more it is of a 'nature and quality' to be recognized as inappropriate for judicial review" and thus subject to discretionary function immunity. 293 Kan. at 234 (quoting *Kansas State Bank & Tr. Co. v. Specialized Transportation Services, Inc.*, 249 Kan. 348, 365, 819 P.2d 587 [1991]). Ministerial activities are less likely to fall within the discretionary function immunity, and the "expertise, whether educational or experiential," employed in decision making is relevant to determining whether it is a discretionary function. 293 Kan. at 234-35.

To determine whether the discretionary function immunity applies to how the defendants hired, supervised, trained, or retained employees to make inmate transfer or security level decisions, the court must analyze the nature and quality of the decisions including the expertise and experience the decisionmakers relied on to make the decisions. See *Williams*, 310 Kan. at 795-98. Although inmate housing decisions have been addressed in habeas corpus actions, appellate courts have not addressed whether the decision to house an inmate at a particular security level or specific facility is a discretionary function under the KTCA. See *Foster v. Maynard*, 222 Kan. 506, 507-08, 565 P.2d 285 (1977) (in a habeas corpus claim it is "an administrative classification decision made in the day-to-day operation and management of a penitentiary" to decide where to house an inmate); *Lynn v. Simmons*, 32 Kan. App. 2d 974, 981, 95 P.3d 99 (2003) (finding no protected liberty interest to remain at a particular Kansas prison in a habeas corpus claim alleging retaliatory transfer). Determining whether the discretionary function immunity applies requires the court to make a fact-specific analysis of each case. See, e.g., *Williams*, 310 Kan. at 798 ("[T]he question of whether discretionary function immunity arises is highly contextual.").

Under the KTCA liability is the rule and immunity is an exception; thus, the "governmental entity bears the burden to establish immunity under the exceptions of the

Kansas Tort Claims Act." *Soto*, 291 Kan. 73, Syl. ¶ 5. In deciding a motion to dismiss, the court looks only to the pleadings to determine whether the allegedly negligent behavior violating the KTCA constitutes a discretionary function. See *Keiswetter*, 304 Kan. at 367-68 (trial courts considering motions to dismiss are limited to a review of the pleadings). The defendants failed to present evidence from the pleadings demonstrating the discretionary, nonmandatory nature of the objectionable conduct. Nor did the defendants provide information about the expertise or experience necessary. The Kansas Supreme Court has explained that it is "unwilling to hold that any exercise of discretion—no matter how minute by however low level an employee—inevitably means that" discretionary function immunity exists. *Williams*, 310 Kan. at 798. The facts asserted in Matson's petition and the district court's findings of fact in its order dismissing Matson's petition do not demonstrate that the governmental entity's decision to transfer Matson—or the hiring, training, retention, or supervision of its employees who decided to transfer Matson—was an exercise of discretion as to be "'of the nature and quality which the legislature intended to put beyond judicial review.'" See 310 Kan. at 798 (quoting *Bolyard v. Kansas Dept. of SRS*, 259 Kan. 447, 452, 912 P.2d 729 [1996]).

Additionally, the discretionary function immunity does not protect decisions that violate the government entity's legal duty. See, e.g., *Barrett v. U.S.D. No. 259*, 272 Kan. 250, 263, 32 P.3d 1156 (2001). "[T]he discretionary function exception is not applicable in those situations where a legal duty exists, either by case law or by statute, which the government agency must follow." *Barrett*, 272 Kan. at 263. Likewise, the discretionary function exception "provides a defense against only ordinary negligence and does not apply to allegations of willful, gross, or wanton negligence." *Barrett*, 272 Kan. at 264. This means that the exception does not provide immunity from a "patently unreasonable or plainly wrongful course of conduct" that violates legal duties. See *Estate of Randolph v. City of Wichita*, 57 Kan. App. 2d 686, 699, 459 P.3d 802 (2020). Matson has alleged that defendants retaliatorily transferred him the day after he filed a grievance—which is a

14

constitutionally protected activity. Defendants cannot use the discretionary function exception to avoid liability for intentionally violating an inmate's constitutional rights.

Presumably the defendants have many defenses to Matson's claims, despite the suspect timing, demonstrating that they did not violate his constitutionally protected rights. However, at this stage in the proceedings that information is unavailable to this court and "[d]ismissal is justified only when the allegations in the petition clearly demonstrate plaintiff does not have a claim." *Halley v. Barnabe*, 271 Kan. 652, 656, 24 P.3d 140 (2001). When reviewing the district court's decision to grant a motion to dismiss, this court "will assume as true the well-pled facts and any inferences reasonably drawn from them" and "[i]f those facts and inferences state any claim upon which relief can be granted, dismissal is improper." *Williams*, 310 Kan. at 784. As the party carrying the burden to demonstrate an exception to liability immunizes the defendants from Matson's claims, the defendants were required to show that the pleadings demonstrated that the discretionary function exception immunized its actions. The defendants' motion to dismiss states that "[i]nmate classification, billeting and transfers are discretionary decision[s] per the [*Hopkins v. State*, 237 Kan. 601, 610, 702 P.2d 311 (1985)] definition." The motion to dismiss lacks any factual support for this legal conclusion. Moreover, the discretionary function exception does not immunize the defendants from liability for conduct that violates a legal duty.

The defendants failed to meet their burden at this early stage to demonstrate that the discretionary function exception shields them from liability for Matson's claim under the KTCA.

CONCLUSION

The district court erred in finding Matson's response to defendants' motion to dismiss untimely and the court should have considered his arguments therein. The district

15

court also erred in dismissing Matson's claims because (1)  the defendants failed to show that the police protection exception to liability under the KTCA applies to Matson's KTCA claim; (2) there was insufficient evidence to demonstrate that the discretionary function exception provided immunity for Matson's KTCA claim; and (3) the police protection and discretionary authority exceptions to immunity under the KTCA do not provide immunity from liability for Matson's § 1983 claim.  The district court's dismissal is reversed and remanded.

On remand, Maston's KTCA claims must be reinstated for further proceedings, and the district should consider Matson's response to the motion to dismiss to determine whether the defendants were immune from liability in his federal § 1983 claim.

Reversed and remanded with directions.