IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 108,992

MIKE C. MATSON,
*Appellant*,

v.

KANSAS DEPARTMENT OF CORRECTIONS, *et al.*,
*Appellees.*

SYLLABUS BY THE COURT

1.

The inmate trust fund established by the Kansas Department of Corrections pursuant to K.S.A. 76-173 is a trust and is subject to the Kansas Uniform Trust Code, K.S.A. 58a-101 *et seq.*

2.

The Kansas Uniform Trust Code establishes the exclusive venue for actions filed pursuant to the Kansas Uniform Trust Code.

Review of the judgment of the Court of Appeals in an unpublished opinion filed November 15, 2013. Appeal from Norton District Court; PRESTON PRATT, judge. Opinion filed April 3, 2015. Judgment of the Court of Appeals affirming the district court is reversed. Judgment of the district court is reversed and remanded with directions.

*Mike C. Matson*, appellant pro se, was on the briefs for appellant.

*Robert E. Wasinger*, of Kansas Department of Corrections, was on the brief for appellees.

The opinion of the court was delivered by

STEGALL, J.: Mike Matson is an inmate in the custody of the Kansas Department of Corrections. Like all inmates, Matson's property rights are limited. He does, however, take advantage of the statutorily created inmate trust fund to place money in the custody of the Department of Corrections for his use and benefit while serving his sentence.

After becoming dissatisfied with the management of the inmate trust fund, Matson filed this pro se suit in Leavenworth District Court pursuant to the Kansas Uniform Trust Code (KUTC), codified at K.S.A. 58a-101 *et seq.* He would eventually name as defendants the State of Kansas, the Department of Corrections, and various state officials, including the Warden of the Norton Correctional Facility where Matson was incarcerated at the time. He alleged the defendants were in breach of trust as a result of various fees charged against the balance held in his inmate trust fund. Matson claimed the Department of Corrections' Internal Management Policies and Procedures authorizing the challenged fees violated both state law and the Fifth Amendment to the United States Constitution.

The defendants quickly moved to transfer venue to Norton District Court in order to better serve the convenience of the parties. The Leavenworth District Court granted the motion without a hearing and prior to any responsive pleading from Matson. Once the case reached Norton District Court, Matson filed a motion to transfer venue back to Leavenworth District Court. Matson claimed the inmate trust fund is administered at the Lansing Correctional Facility in Leavenworth County—a fact the defendants have never disputed. Matson argued his claims under the KUTC could only be brought in Leavenworth District Court because K.S.A. 58a-204 sets venue for such claims "in the county of this state in which the trust's principal place of administration" is located.

The Norton District Court—citing K.S.A. 60-609(a), which permits a change of venue for the convenience of the parties to "any county where [the action] might have

2

been brought"—denied Matson's motion on the grounds his suit could have been brought in Norton District Court pursuant to K.S.A. 60-602(2) given the Warden of the Norton Correctional Facility was named as a defendant. The district court then granted summary judgment to the defendants on all of Matson's claims.

On appeal to the Kansas Court of Appeals, Matson reprised his venue arguments and claimed the district court erred in granting summary judgment to the defendants. A panel of the Court of Appeals again rejected Matson's arguments and affirmed the judgment of the lower court. With respect to venue, the panel held the "Leavenworth District Court correctly found that Matson could have filed his suit in Norton County under K.S.A. 60-602(2) since one of the named defendants was the warden of the Norton Correctional Facility." *Matson v. Kansas Dept. of Corr.*, No. 108,992, 2013 WL 6062910, at *2 (Kan. App. 2013) (unpublished opinion).

The panel held K.S.A. 58a-204, setting venue for actions under the KUTC in the county where the trust is principally administered, would not have prevented Matson from filing his suit in Norton District Court. 2013 WL 6062910, at *2. In so doing, the panel relied on a comment to section 204 of the Uniform Trust Act which states that "'general rules governing venue continue to apply'" in "'most proceedings where jurisdiction . . . is based on a factor other than the trust's principal place of administration.'" 2013 WL 6062910, at *2.

Matson timely petitioned this court for review, and we exercise jurisdiction pursuant to K.S.A. 60-2101(b). Because we reverse on the question of venue as discussed below, we need not reach, and express no opinion concerning, the merits of Matson's various claims.

DISCUSSION

We apply a deferential standard of review to lower court decisions to change or not to change venue. We will not disturb such rulings absent a showing of an abuse of discretion. *State v. Higgenbotham*, 271 Kan. 582, 591, 23 P.3d 874 (2001). Discretion is abused, however, when its exercise is premised on an error of law. *State v. Nelson*, 296 Kan. 692, 694, 294 P.3d 323 (2013). Matson contends the Leavenworth District Court's decision to transfer venue to Norton County, and the Norton District Court's refusal to transfer it back, were both premised on an erroneous conclusion of law: *i.e.*, his suit could have been brought in Norton District Court in the first place. We agree with Matson.

Whether K.S.A. 58a-204 applies to Matson's claims and whether that provision required him to file those claims in Leavenworth District Court—and nowhere else—present questions of statutory interpretation over which we exercise plenary review. See *State v. Brown*, 298 Kan. 1040, 1057, 318 P.3d 1005 (2014). The fundamental rule of statutory interpretation is the intent of the legislature is dispositive if it is possible to ascertain that intent. *State v. Looney*, 299 Kan. 903, 906, 327 P.3d 425 (2014). The language of a statute is our primary consideration in ascertaining the intent of the legislature. 299 Kan. at 906. Where such language is plain and unambiguous, it is typically determinative of legislative intent. *State v. O'Connor*, 299 Kan. 819, 822, 326 P.3d 1064 (2014).

The defendants first contend K.S.A. 58a-204 does not apply to Matson's claims because the inmate trust fund is not actually a trust and is therefore not subject to the KUTC. But we have no difficulty finding the plain language of the applicable statutes establishes the inmate trust fund is, in fact, a trust subject to the KUTC. In accordance with Kansas law, the Department of Corrections has designated "an officer or employee"

4

to "have custody and charge of all moneys" held by any correctional institution "for the use and benefit of each individual who is . . . [an] inmate of the institution." K.S.A. 76-173. "Such moneys shall constitute . . . [an] inmate trust fund." K.S.A. 76-173.

Generally speaking, a trust subject to the KUTC is created when five conditions are met: (1) a settlor with capacity (2) manifests an intent to create a trust and (3) gives a trustee duties to perform for the benefit of (4) a definite beneficiary where (5) the same person is not the sole trustee and the sole beneficiary. See K.S.A. 58a-402(a). The statutory scheme establishing the inmate trust fund satisfies these criteria. Moreover, the terms of the KUTC make it explicitly applicable to "trusts created pursuant to a statute." K.S.A. 58a-102.

Having determined the inmate trust fund is a trust subject to the KUTC, we must next decide whether the KUTC establishes exclusive venue in the county where the inmate trust fund is administered—*i.e.*, in Leavenworth County. The venue provision of the KUTC applicable to Matson's claims is as follows: "venue for a judicial proceeding involving a trust is in the county of this state in which the trust's principal place of administration has been, is or will be located." K.S.A. 58a-204. The general statute relied upon by the lower courts to establish Matson's claims could have been brought in Norton County states actions "against a public officer for an act done or threatened to be done by such officer by virtue or under the color of his or her office, or for neglect of his or her official duties" are required to be "brought in the county in which the cause, or some part thereof arose." K.S.A. 60-602(2).

It is a general rule of statutory interpretation that, when both a general statute and a specific statute govern the same topic, the specific statute controls. See, *e.g.*, *State v. Williams*, 299 Kan. 911, 930, 329 P.3d 400 (2014). K.S.A. 60-602(2) is a generic venue statute of general applicability. K.S.A. 58a-204 is a specific statute, limited in scope to

5

only those actions governed by the KUTC. The rule that a general statute should yield to a specific statute is "'merely a rule of interpretation which is used to determine which statute the legislature intended to be applied in a particular case.'" *Williams*, 299 Kan. at 930 (quoting *State v. Helms*, 242 Kan. 511, 514, 748 P.2d 425 [1988]). In this instance, it is clear the legislature, in adopting the KUTC, established a specific venue exception to the more general rules. As such, K.S.A. 58a-204 controls the venue question in this case and establishes the exclusive venue for Matson's claims in Leavenworth District Court. See *Vontress v. State*, 299 Kan. 607, 613, 325 P.3d 1114 (2014) (quoting *State v. Turner*, 293 Kan. 1085, 1088, 272 P.3d 19 [2012]) ("'"'Where there is a conflict between a statute dealing generally with a subject, and another dealing specifically with a certain phase of it, the specific legislation controls in a proper case. [Citations omitted.]'"'").

Finally, we cannot approve the Court of Appeals' efforts to find legislative intent in the commentary appended to the uniform law but not adopted into law by our legislature. Such material is outside the plain language the legislature used to express its intent. See *State v. Roudybush*, 235 Kan. 834, 846, 686 P.2d 100 (1984) ("[T]he comments following the text of a statute are not a part of the legislative enactment, but are extrinsic evidence to be used as an aid in construction *only* if the language of the statute is ambiguous."). Arguably, the legislature's choice to not expressly include the substance of the comment in the KUTC—as many other states have done—indicates a contrary intent. See, *e.g.*, Ala. Code § 19-3B-204 (2007) (venue for actions involving a trust proper "in any county where venue is proper for civil actions generally"); see also Fla. Stat. § 736.0204 (2014) (venue proper in any county where the venue is proper under rules of civil procedure); Mich. Comp. Laws § 700.7204 (2013) (venue for trust may be "[a]s otherwise specified by court rule"); Mont. Code Ann. § 72-38-205 (2013) (Except as otherwise stated in the statute, "the proper county for commencement of a proceeding pursuant to this chapter is determined by the rules applicable to civil actions generally."); Neb. Rev. Stat. § 30-3815 (2008) (venue statute allows court to transfer proceeding to

6

another court "in the interest of justice"). The KUTC contains no similar provision indicating a legislative intent to incorporate the substance of the comment into Kansas law.

Having found that venue was exclusively in Leavenworth County, the question of remedy arises. In certain rare cases, an erroneous change of venue may be harmless error. See *Alliance Life Ins. Co. v. Ulysses Volunteer Fireman's Relief Assn.*, 215 Kan. 937, 942, 529 P.2d 171 (1974) (improper venue was harmless when the case was decided as a matter of law on stipulated facts). However, the party benefiting from the error has the burden to come forward with a showing of harmlessness. *Kansas City Mall Assocs. v. Unified Gov't of Wyandotte County/KCK*, 294 Kan. 1, 8, 272 P.3d 600 (2012). Here, the defendants have not done so. Therefore, because the change of venue from Leavenworth District Court to Norton District Court was error in this case, we reverse and remand this matter to the Leavenworth District Court.

The opinion of the Court of Appeals is reversed. The judgment of the district court is reversed, and the case is remanded to Leavenworth District Court for further proceedings.

\* \* \*

BILES, J., concurring:  I agree it was error to transfer venue to Norton County. This case properly belongs in Leavenworth District Court as our court has now held. I write separately to emphasize that our decision necessarily vacates the other aspects of the Court of Appeals decision, including the panel's conclusion that the inmate lacked standing and upholding the Internal Management Policy and Procedure (IMPP). In my view, what needs to happen next is a deeper review into the practices brought to light by

7

this inmate's lawsuit and the parties' claims and defenses on the merits. I wish to note a few concerns.

Matson questions whether the Department of Corrections could legally implement the IMPP without notice-and-comment rulemaking. This appears to be a colorable issue that will benefit from further probing. Certainly, on a system-wide basis, the amounts involved appear substantial if the affidavit Matson supplied to the district court is accurate: that his mother's monthly deposit of $56.40 is reduced to $45 before it reaches his spending account. *Matson v. Kansas Dept. of Corr.*, No. 108,992, 2013 WL 6062910, at *1 (Kan. App. 2013) (unpublished opinion).

What we know from the record is that under IMPP 04-103: (1) effective January 1, 2011, deposits into inmate trust accounts were required to be submitted electronically through private contractors who, in turn, charged a per-deposit fee; and (2) each inmate's pro rata share of interest earned by the fund each interest period was reduced by the inmate's share of applicable banking fees. But when KDOC implemented the IMPP, its own regulation provided that "[a]ll funds sent for deposit to an inmate's trust account *shall be* in the form of a money order, a cashier's check, or a certified check. The funds shall be sent to the centralized banking location . . . ." (Emphasis added.) K.A.R. 44-12-601(b)(5).

Therefore, the IMPP appears to contradict on its face a properly issued administrative regulation, which had the force and effect of law. See K.S.A. 2014 Supp. 77-415(c)(4). If so, the Department of Corrections operated for more than 3 years with a practice that siphoned off someone's money by ignoring its own regulation and depriving both the inmates and the general public of a free-of-cost method for sending and receiving money intended for an inmate's benefit. How can the IMPP trump a lawfully adopted administrative regulation and simply eviscerate it?

8

The Court of Appeals avoided this question by holding that Matson lacked standing to challenge the IMPP's deposit requirements—despite its possible illegality. This appears to be premised on the agency's argument that the IMPP applied only to those who sought to deposit their money into the trust for the inmate's benefit. But if that were the case, how does that reconcile with the district court's recitation of uncontroverted facts and an exhibit attached to the agency's motion to dismiss characterizing the third-party vendors' fees as deductions from amounts deposited, rather than surcharges assessed against the depositor?

Another explanation offered is that the existing rule did not expressly prohibit the agency from establishing an IMPP regarding banking and deposit procedures. *Matson,* 2013 WL 6062910, at *7. But this observation fails to address how the procedures in IMPP could conflict with and effectively trump those set out in the regulation.

And as to the bank service fees deducted from earned interest, the Court of Appeals concluded the general rule requiring notice-and-comment rulemaking did not apply because of an internal management exception to the general notice-and-comment rulemaking requirements set out in law. See *Matson*, 2013 WL 6062910, at *6. Under that exception, a "statement of agency policy may be treated as binding within the agency if such statement of policy is directed to . . . [t]he internal management of or organization of the agency." K.S.A. 2014 Supp. 77-415(b)(2)(B). But this statute also provides that "[n]o such statement . . . may be relied upon to bind the general public." K.S.A. 2014 Supp. 77-415(b)(2)(B).

In other words, the district court will need to look closely whether each challenged aspect of the IMPP, which on its face authorizes the deduction of account maintenance expenses from the prisoners' earned interest and compels the general public to use of the

9

agency's fee-based, third-party deposit services, is truly a matter of "internal management." See *Californians for Pesticide Reform v. Department of Pesticide Regulation*, 184 Cal. App. 4th 887, 907, 109 Cal. Rptr. 3d 428 (2010) (describing exception to notice-and-comment rulemaking for regulations relating "only to the internal management of the state agency" as a narrow exception "inapplicable where a rule is to have general application and is to affect persons subject to regulation by the agency").

To be sure, careful consideration will no doubt be given on remand to these and other issues necessarily arising from this inmate's challenge to the Department of Corrections' IMPP.