NOT DESIGNATED FOR PUBLICATION

No. 115,134

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Matter of the Marriage of

CRAIG EUGENE BARBEE,
*Appellee*,

and

ILEANA MORALES-COLON,
*Appellant.*

MEMORANDUM OPINION

Appeal from Lyon District Court; MERLIN G. WHEELER, judge. Opinion filed March 31, 2017. Affirmed.

*Thomas A. Krueger*, of Krueger Law Offices, of Emporia, for appellant.

*Deborah A. Huth*, of Atherton & Huth Law Office, of Emporia, for appellee.

Before HILL, P.J., BUSER and LEBEN, JJ.

BUSER, J.: This is an appeal from a divorce action between Craig Eugene Barbee and Ileana Morales-Colon. At the time Barbee filed for divorce, the couple had been married about 5 years. At the conclusion of the divorce proceedings, the district court issued rulings relating to the division of marital property, maintenance, and award of attorney fees. Morales-Colon appeals these rulings, claiming that the district court abused its discretion. Having considered the record and briefs filed by the parties, we find no abuse of discretion and affirm the district court's judgment. Additionally, we deny Barbee and Morales-Colon's separate motions for an award of appellate attorney fees.

1

FACTUAL AND PROCEDURAL BACKGROUND

Barbee and Morales-Colon were married on September 7, 2010. The couple resided at Barbee's residence in Emporia, Kansas, for about 5 years, until he filed a divorce petition on May 28, 2015. By agreement, Barbee and Morales-Colon continued to reside at the marital residence throughout the pendency of the divorce proceedings.

Trial was held on November 19, 2015. The couple filed a stipulation with the district court in which they agreed to the values of most assets. At trial, the district court considered four contested issues: (1) the value and division of Barbee's Wolf Creek Nuclear Operating Corporation Employee Savings Plan (savings plan); (2) the starting date and amount of maintenance payable to Morales-Colon; (3) whether Morales-Colon should receive a cash equalization payment; and (4) whether either spouse was entitled to attorney fees. The district court ruled in Barbee's favor on all four issues.

Morales-Colon filed this appeal, claiming the district court's ruling on each of these issues was an abuse of discretion. Both parties have also asked our court to award attorney fees for the legal work associated with the appeal.

DIVISION OF MARITAL PROPERTY

Preliminarily, Morales-Colon identifies as her first issue on appeal: "A Kansas court abuses its statutorily guided discretion when it fails to consider required factors." Morales-Colon then sets forth Kansas law which generally provides that a district court's discretion is frequently guided by statutory factors. It appears Morales-Colon is focusing her argument on K.S.A. 2016 Supp. 23-2802(c) which sets forth 10 factors that a court must consider in making a division of marital property:

> "(1) The age of the parties; (2) the duration of the marriage; (3) the property owned by
> the parties; (4) their present and future earning capacities; (5) the time, source and

2

manner of acquisition of property; (6) family ties and obligations; (7) the allowance of maintenance or lack thereof; (8) dissipation of assets; (9) the tax consequences of the property division upon the respective economic circumstances of the parties; and (10) such other factors as the court considers necessary to make a just and reasonable division of property." K.S.A. 2016 Supp. 23-2802(c).

While we agree with Morales-Colon's contention generally, as pertains to this first issue, she has not identified where the district court in this case has failed to consider these standards in making its rulings. Of note, a district court is not required to articulate each of the relevant factors or the specific evidence that supports its findings for each factor. Indeed, "'[i]n the absence of an objection first made in the trial court, omissions in findings will not support reversal because the trial court is presumed to have found the facts necessary to support its judgment.'" *In re Marriage of Whipp*, 265 Kan. 500, 508-09, 962 P.2d 1058 (1998) (quoting *In re Marriage of Bradley*, 258 Kan. 39, 44, 899 P.2d 471 [1995]). As regards this issue, Morales-Colon has not identified any failure by the district court to comply with the standards enunciated in K.S.A. 2016 Supp. 23-2802(c). Accordingly, we find no error.

For her second issue on appeal, Morales-Colon asserts the district court erred in dividing Barbee's savings plan. Morales-Colon disputes the value of the savings plan prior to the division, the formula the district court used to divide the plan, and the calculations it made to arrive at the final apportioned figure.

In order to analyze the propriety of the division of the savings plan, it is necessary to summarize the evidence presented to the district court and the court's findings regarding the savings plan. An important aspect of whether the savings plan was properly divided was the determination of the value of the plan as of the date of the couple's marriage on September 7, 2010. As summarized by the district court, Barbee argued that this "value should include the $10,000 loan he took from the savings plan to finance such things as [Morales-Colon]'s wedding rings, moving expenses of [Morales-Colon]'s

property from Puerto Rico and payment of [Morales-Colon]'s pre-marriage credit card and back rent obligations." Under Barbee's theory of valuation, the $10,000 loan should have been added to the savings plan balance as of the date of the marriage, which would result in a total plan value of $127,981.58. On the other hand, Morales-Colon argued for excluding the $10,000 loan amount from the savings plan balance as of the date of the marriage.

The district court noted that Morales-Colon provided "little explanation to support her position why the loan amount should be excluded" from the total balance. The district court ultimately adopted Barbee's view and found that "the loan should be considered as an asset of the savings plan; as such, the amount of $127,981.58 should be used in calculations to determine the ultimate issue of whether any portion of this savings plan should be apportioned to [Morales-Colon]."

The district court also considered the proper formula for calculating what portion of the savings plan should be awarded to Morales-Colon. Both parties stipulated that, as of the valuation date, May 21, 2015, the value of the savings plan was $250,968.68, although the couple differed on the best method to appropriately calculate the apportionment.

Barbee and Morales-Colon each proposed using apportionment methods suggested by the Shawnee County Family Law Guidelines (Guidelines). Morales-Colon argued that the district court should calculate the difference between the savings plan's value on the date of their marriage and its current value, arriving at a difference of $138,367.59. Morales-Colon then divided this amount by 2, which resulted in a total amount of $69,183.79, which she requested should be awarded to her.

Barbee proposed an alternative fractional interest calculation method. Using this method, the district court would take the number of months the couple were married (56

months), divide that number by the number of months Barbee had worked at Wolf Creek (341 months), and split the resulting percentage (16 percent) in half, which would award Morales-Colon 8% of the savings plan's balance as of the valuation date, or $19,858.63.

In its memorandum decision, the district court noted that the "guidelines do not suggest any preference for either method and both are generally recognized by the judges of the Fifth Judicial District of Kansas." The district court accepted Barbee's methodology and calculations, ruling that Morales-Colon should receive $19,858.63 from the savings plan.

Against this factual background, we review the law which guides district courts in the division of marital property. District courts are vested with broad discretion in adjusting the property rights and financial affairs of divorcing parties. A judicial action constitutes an abuse of discretion if (1) no reasonable person would take the view adopted by the district court; (2) the action is based on an error of law; or (3) the action is based on an error of fact. *Wiles v. American Family Life Assurance Co.*, 302 Kan. 66, 74, 350 P.3d 1071 (2015). Conclusions that go outside the proper legal framework or fail to consider proper statutory limitations or legal standards are also an abuse of discretion. *Matson v. Kansas Dept. of Corrections*, 301 Kan. 654, 656, 346 P.3d 327 (2015).

The party asserting the district court abused its discretion bears the burden of showing such abuse of discretion. *Northern Natural Gas Co. v. ONEOK Field Services Co.*, 296 Kan. 906, 935, 296 P.3d 1106 (2013). Moreover, a district court's ruling on maintenance or division of property should be affirmed if its findings are supported by substantial competent evidence, even if there is evidence that may support an alternative conclusion. *In re Marriage of Hair*, 40 Kan. App. 2d 475, 486, 193 P.3d 504 (2008). Substantial competent evidence is evidence that possesses both relevance and substance and provides a substantial basis of fact from which the issues can be reasonably

determined. *Frick Farm Properties v. Kansas Dept. of Agriculture*, 289 Kan. 690, 709, 216 P.3d 170 (2009).

On appeal, Morales-Colon reprises her claim that the $10,000 loan was not an asset of the savings plan. She emphasizes that the loan was premarital and was ultimately repaid using marital funds. We are not persuaded that Morales-Colon has shown an error of fact or law. Moreover, at the time of the marriage the loan may have been outstanding but it was still an asset of the savings plan and, therefore, had economic value. While other judges may disagree with this view, we conclude the district court's determination was well within the ambit of judicial discretion.

Next, Morales-Colon objects to the district court's use of the alternative fractional interest calculation method. In particular, she asserts this formula, although listed in the Guidelines, should only be used when retirement payments are already being made under the plan. We question whether the use of this formulation is as limited as Morales-Colon asserts. Regardless, she does not argue that the formulation is intrinsically unsound as a methodology to be used under the circumstances of this case. Clearly, different mathematical approaches may be useful in arriving at an appropriate apportionment of a savings plan. Moreover, the district court was under no obligation to follow the Guidelines in making its division of the savings plan. See *Hair*, 40 Kan. App. 2d at 482 ("This court has previously held that it is not an abuse of discretion for the district court to refuse to follow the recommendations of the [family law] guidelines.").

Although both methods proposed by Barbee and Morales-Colon can be found in the Guidelines, we understand that the district court's selection of Barbee's method was based, in part, on its conclusion that under the circumstances, Barbee's proposed figure was more appropriate than Morales-Colon's proposed figure. As the district court stated in its memorandum decision:

"This Court concludes that under the circumstances of this marriage relationship, especially considering the ages of the parties, the future earning capacity of [Morales-Colon], and that [Morales-Colon] did not financially contribute to this savings plan, the alternative factional interest calculations method suggested by [Barbee] should be adopted."

The district court's reasons for selecting Barbee's method for division of the savings plan were derived from K.S.A. 2016 Supp. 23-2802(c). Moreover, although the district court is required to make a fair and equitable division of property, this "fair and equitable" division does not require that the property be equally distributed among the parties. *Hair*, 40 Kan. App. 2d at 480-81; *In re Marriage of Roth*, 28 Kan. App. 2d 45, 48-49, 11 P.3d 514 (2000). Morales-Colon has failed to show that the district court's adoption of Barbee's proposed methodology was an abuse of discretion.

Finally, Morales-Colon identifies certain mathematical discrepancies in the district court's division of the savings plan. For example, she claims that as part of the division, the district court's calculation of the length of the couple's marriage was inaccurate. Barbee, on the other hand, justifies the district court's figure by noting that Morales-Colon has mistakenly relied on the date the couple's divorce was final rather than the valuation date. Similarly, Morales-Colon challenges the length of Barbee's employment, but on appeal Barbee justifies the figure based on his court testimony and the agreed-upon valuation date. Morales-Colon also points to a mathematical error in the savings plan award which amounts to less than $200. Having reviewed these matters, we find no reversible error.

MAINTENANCE

Morales-Colon raises two separate issues regarding the district court's award of maintenance. First, she asserts the district court's finding "as to the amount of spousal maintenance was based on speculation of [Morales-Colon's] future income as presented

7

by [Barbee]'s testimony." Second, she contends the district court "ignored the agreement of the parties as to the duration of the maintenance." We will separately address these two issues in order after summarizing the evidence relevant to the district court's findings regarding maintenance.

According to the testimony, Barbee was born in 1958, while Morales-Colon was born in 1970. Their marriage lasted about 5 years. Barbee's recent annual income was about $110,000. Morales-Colon was not employed during the marriage. She had been a nurse in Puerto Rico and she had previously obtained a commercial driver's license (CDL). Shortly before the marriage, however, Morales-Colon worked in Lawrence as a process technician earning about $15 per hour. Morales-Colon testified that she did not work during the marriage because the couple had an understanding that there was no need for her to seek employment. Barbee disputed this contention, however.

At trial, Morales-Colon maintained that she could not work as a nurse because "it's not a field for me. You have to be born for that." In addition, Morales-Colon asserted that she would "not do [a] CDL." As a result, Morales-Colon's maintenance calculations were based on the assumption that she could only obtain employment earning between $12 and $15 an hour. Using these assumptions, Morales-Colon sought $1,454 per month in maintenance based on an annual salary of $28,080.

Barbee countered Morales-Colon's maintenance assumptions, arguing that she could be employed as a registered nurse or obtain her CDL again in order to earn between $40,000 and $50,000 per year. Using these assumptions, Barbee argued that monthly maintenance payments of $1,256 to Morales-Colon were appropriate.

The district court ruled that Morales-Colon should receive $1,256 per month for 12 months. In its decision, the district court stated that Morales-Colon's maintenance assumptions did not "accurately represent her earning potential." In particular, the district

court noted that Morales-Colon's testimony "suggested that she was seeking employment at wage ranges in excess of what was used in her calculations [and] given the diverse background and training held by [Morales-Colon], it appear[ed] . . . her earning potential exceed[ed] her counsel's assertions." Moreover, the district court found that Morales-Colon had not made "any significant effort to seek employment or reinstatement of any licenses held by her, which effort would have had the potential to ameliorate the financial distress she claims."

On appeal, Morales-Colon first contends that the district court abused its discretion because it based its decision on speculation regarding Morales-Colon's future earning capacity. Morales-Colon places particular emphasis on Barbee's trial testimony about Morales-Colon's earning potential, asserting that it was speculative.

Barbee counters that all of the statutory factors relevant for a district court to consider in making a maintenance award were addressed by the court. In addition, Barbee notes that testimony about earning potential is, by nature, uncertain under this legal standard and not a basis for finding the district court abused its discretion.

Next, we review the relevant Kansas law pertaining to the award of maintenance. An award of maintenance is governed by K.S.A. 2016 Supp. 23-2901 *et seq.* Under K.S.A. 2016 Supp. 23-2902, a court may grant maintenance to either spouse "in an amount the court finds to be fair, just and equitable under all of the circumstances." In *Hair*, this court set forth factors that a district court may consider in determining the amount of a maintenance award. These factors include: (1) the age of the parties; (2) the parties' present and prospective earning capacities; (3) the length of the marriage; (4) the property owned by the parties; (5) the parties' needs; (6) the time, source and manner of acquisition of property; (7) family ties and obligations; and (8) the parties' overall financial situation. 40 Kan. App. 2d at 484. Appellate courts generally review a district court's maintenance award for abuse of discretion and should uphold the court's findings

9

if they are supported by substantial competent evidence. *In re Marriage of Vandenberg*, 43 Kan. App. 2d 697, 706-07, 229 P.3d 1187 (2010); *Hair*, 40 Kan. App. 2d at 486.

We are not persuaded that Morales-Colon has shown reversible error with regard to Barbee's testimony. A review of the trial transcript shows there were no contemporaneous objections to Barbee's testimony about Morales-Colon's future earning capacity that she now claims was speculative. As a result, Barbee's testimony, while of limited weight in some respects, was admissible and appropriate for the district court to consider. Moreover, Barbee's testimony was corroborated by Morales-Colon's testimony. It is also noteworthy that Morales-Colon's proposed monthly maintenance award of $1,454 was only $198 per month more than Barbee's proposed maintenance award of $1,256. Given the relatively small difference in amounts by comparison, it is difficult to discern a judicial abuse of discretion in the district court's selection of either proposed maintenance figure. Quite simply, Morales-Colon has not shown reversible error.

Moreover, as Barbee points out, the record shows the district court did consider some of the relevant factors mentioned in *Hair*. The district court gave special focus to Morales-Colon's earning capacity, which—given her age, prior ability to drive a commercial vehicle, and prior employment as a nurse—appeared to be greater than Morales-Colon estimated. These facts resulted in the district court's determination that Barbee's estimation of a reasonable maintenance award was more appropriate than Morales-Colon's assessment.

Morales-Colon also contends the district court ignored the agreement of the parties that maintenance should be paid for 19 months. She asserts: "The trial court arbitrarily rejected the agreement of the parties as to the length of the maintenance and ordered maintenance for 12 months." Barbee counters that the district court did order maintenance for 19 months, however, "the maintenance beginning date was backdated to June 1, 2015 based on the fact that [Barbee] continued to be the sole source of support for

10

[Morales-Colon] during the pendency of the action . . . resulting in an additional 12 months remaining."

In ruling on the duration of the maintenance payments, the district court noted "the parties do not differ in the total number of payments, both arriving at 19. There exists, however, a dispute as to when those payments should begin." The district court then acknowledged Barbee's argument that he should receive a credit for 7 months of maintenance during the pendency of the litigation because Morales-Colon remained in the home that was owned by Barbee and her living expenses were paid with free access to financial accounts.

In the end, the district court essentially adopted Barbee's proposal for 19 months of maintenance with credit for the 7 months he supported Morales-Colon during the litigation. The district court specifically found that Morales-Colon "has benefitted considerably from being able to occupy [Barbee]'s residence, without expense, during the pendency of this divorce."

Morales-Colon has not shown an abuse of discretion by the district court's order regarding the duration of maintenance. The district court's ruling was consistent with the parties' agreement and supported by substantial competent evidence. "When the district court's findings [for] supporting maintenance are supported by the evidence, this court will not second guess the district court's decision." *Hair*, 40 Kan. App. 2d at 486. We find no reversible error.

CASH EQUALIZATION PAYMENT

For her next appellate issue, Morales-Colon claims the district court "failed to consider all the evidence relating to a cash equalization claim" on her behalf. Barbee

11

responds that the district court "did not abuse its discretion in denying [Morales-Colon]'s request for a cash equalization."

The district court's memorandum decision detailed its reasons for denying Morales-Colon's request for a cash equalization payment:

"The Court notes the extensive stipulations of the parties as to the valuation of property, assignment of interests in vehicles, other tangible personal property, intangible personal property, and real estate. . . .

. . . .

"The differences between their respective positions are distinct. [Morales-Colon] requests a cash payment of $17,504.82 . . . . [Barbee] objects to any cash payments to [Morales-Colon], pointing to the expenditures she has made during the pendency of the divorce and her failure to effectively seek employment during this 7 month period. For example, [Barbee] points out that the savings account balance of $11,050.18 included in [Morales-Colon]'s calculations has dwindled to $300. Portions of the withdrawals by [Morales-Colon] from the savings account funded payment of $3,000 for her attorney fees and a loan to [Morales-Colon]'s daughter to purchase a car. That loan has apparently been repaid. However, the account was also used by [Morales-Colon] to fund her on-line gaming activities and post-filing gym membership expenses.

"This savings account was funded by proceeds from a personal injury settlement paid to [Barbee] for injuries sustained by him in an accident. It, along with [Barbee]'s employment income, has been available to [Morales-Colon] at all times during the pendency of this divorce without restriction and has been utilized by her for her own expenditures together with maintenance of the household and payment of normal bills. This account, in the Court's view, has been used by [Morales-Colon] for legitimate as well as unnecessary expenditures.

"Although the Court is aware that the [Barbee]'s personal injury proceeds are considered to be marital property, this Court may also consider the source and manner of acquisition of these funds in making its decision regarding disposition. Considering the source was [Barbee]'s injury and [Morales-Colon]'s failure to attempt any meaningful employment, the Court finds first that these proceeds should not factor into any equalization analysis in favor of [Morales-Colon] and that moreover, the same analysis

precludes any equalization appropriation to [Morales-Colon]. Therefore, [Morales-Colon]'s claim for cash equalization payment is denied."

Cash equalization payments are a means to facilitate an appropriate division of marital property. Once again, a district court is required to follow the factors set forth in K.S.A. 2016 Supp. 23-2802(c), and the decision must be fair and equitable. *Hair*, 40 Kan. App. 2d at 480-81. This court will not overturn a district court's findings if those findings are based on substantial competent evidence. *Vandenberg*, 43 Kan. App. 2d at 715.

Morales-Colon points out that the total value of her withdrawals from Barbee's savings account for personal use (excluding household expenses) totals only $3,760. According to Morales-Colon, both the district court and Barbee failed to account for the other $7,200. She also claims the district court "totally ignored" the equity in Barbee's pickup truck and motorcycle. Barbee counters by arguing that any cash equalization payment would have to account for the reduction in value of his residence, which he submits was valued at $155,750 at the time of the marriage but had a current value of $120,000 to $125,000.

As extensively set forth in the district court's memorandum opinion, the court considered a myriad of marital property and applied appropriate statutory factors in arriving at its decision to deny Morales-Colon's request for a cash equalization payment. While other judges may have viewed the evidence and applied the factors in a manner more favorable to Morales-Colon, on this record we do not find the district court's ruling arbitrary or unreasonable. Moreover, the district court's ruling is supported by substantial competent evidence. The district court did not err in reaching the conclusion that the marital property had been appropriately divided and, as a result, Morales-Colon should not receive a cash equalization payment.

13

ATTORNEY FEES

Both Barbee and Morales-Colon moved the district court to award attorney fees. In particular, Morales-Colon sought $1,500, while Barbee asked the court for $3,000. The district court denied both parties' requests:

> "The Court directs that neither of the parties shall be responsible for the payment of any additional attorney fees incurred by the other. At the same time, however, the Court denies [Barbee]'s request that [Morales-Colon] be required to reimburse to him the $3,000 withdrawn by her from the savings account set over to [Barbee] that she utilized to pay her attorney."

On appeal, Morales-Colon argues that the district court's decision was inequitable, warning it is unlikely she will be able to pay her attorney fees. Barbee responds that the district court denied his request for attorney fees as well and notes this fact shows the district court's ruling was not inequitable.

Kansas law provides that a district court may award attorney fees in a divorce proceeding "as justice and equity require." K.S.A. 2016 Supp. 23-2715. Where the trial court has authority to grant attorney fees, its decision is reviewed under the abuse of discretion standard. *Wiles*, 302 Kan. at 81; *Rinehart v. Morton Buildings, Inc.*, 297 Kan. 926, 942, 305 P.3d 622 (2013). In addition, the district court is vested with wide discretion to determine the amount and recipient of an award of attorney fees. An appellate court will not set aside an award of attorney fees when supported by substantial competent evidence. *In re Marriage of Strieby*, 45 Kan. App. 2d 953, 973, 255 P.3d 34 (2011).

In this case, the district court had the authority and discretion to award or decline to award attorney fees to either Barbee or Morales-Colon. It awarded no fees to either party. This decision was well within the district court's statutory authority under K.S.A.

14

2016 Supp. 23-2715, which gives a district court the discretion to award attorney fees as justice and equity require. As the district court noted, Morales-Colon paid her attorney $3,000 from the savings account, and Barbee's request for reimbursement of that amount was denied. All things considered, the district court's decision not to award Morales-Colon additional attorney fees was not unreasonable or arbitrary. We find no error.

Barbee and Morales-Colon also seek an award from our court for attorney fees incurred in preparation of this appeal. In particular, Barbee's attorney states that she spent 19 hours working on this appeal. At a rate of $200 per hour, Barbee's attorney requests $3,811.57 in fees. Morales-Colon's attorney states that he worked 24.5 hours. At a rate of $200 per hour, Morales-Colon's attorney requests fees in the amount of $5,300.

An appellate court may award attorney fees for services on appeal if the district court had the authority to award attorney fees. Supreme Court Rule 7.07(b) (2017 Kan. S. Ct. R. 50). In addition, if a party has filed an appeal "frivolously, or only for the purpose of harassment or delay," the appellate court may assess attorney fees against the appellant. Supreme Court Rule 7.07(c) (2017 Kan. S. Ct. R. 51).

We are persuaded that the parties' requests for an award of appellate attorney fees should be denied. Although we have determined that Barbee's position on appeal is meritorious, Morales-Colon's appeal is not frivolous and there is no suggestion of harassment or an intent to delay the litigation. On the other hand, the record reflects that Barbee has sufficient resources to pay his attorney reasonable fees without the need for Morales-Colon's financial contribution. Barbee's and Morales-Colon's motions for payment of appellate attorney fees are denied.

Affirmed.

15