NOT DESIGNATED FOR PUBLICATION

No. 117,008

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

VALERIE KASTER,
*Appellee*,

v.

SEAN RILEY,
*Appellant*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; JAMES R. FLEETWOOD, judge, and NOLA TEDESCO
FOULSTON, judge pro tem. Opinion filed February 2, 2018. Affirmed.

*Michael P. Whalen*, of Law Office of Michael P. Whalen, of Wichita, for appellant.

No appearance by appellee.

Before STANDRIDGE, P.J., PIERRON, J., and BURGESS, S.J.

PER CURIAM:  Sean Riley appeals from the Sedgwick County District Court's
denial of his motion for a new hearing on whether Valerie Kaster's petition for a
protection from stalking order should be granted and from the district court's denial of his
motion for recusal of the assigned judge.

FACTUAL AND PROCEDURAL BACKGROUND

On June 3, 2016, Kaster petitioned, pro se, for a protection from stalking order
(PFS) against Riley. A temporary PFS was entered, pending a hearing on the matter,

1

which was scheduled for June 16, 2016. The hearing was convened as scheduled. Present at the hearing were Kaster, her neighbor and landlord, Jeffery Petty, and Kaster's father who had flown in from Florida to be with Kaster at the hearing. Riley was not at the hearing; the record reflects that the sheriff's office had not completed service. Due to Riley's absence, the hearing was continued—as was the temporary PFS—until June 30, 2016, at 9 a.m. Service upon Riley was finally accomplished at 8:45 a.m. on June 29, 2016.

The district court reconvened the hearing as scheduled on June 30, 2016. Kaster was present, as was Petty. Kaster's father had again flown in from Florida to be present at the hearing. Riley also appeared. There is no transcript of this proceeding in the record on appeal. However, the record does indicate that District Judge, pro tem, Nola Foulston did not conduct a full hearing at that time. Judge Foulston spoke with Kaster's father at this proceeding because he had traveled from Florida for the second time to participate, but she did not speak with Petty. At this proceeding, Riley did not want to testify and indicated that he wanted more time to retain an attorney before proceeding. Judge Foulston recalled, "I listened to this case, and I thought, okay, I understand, he really feels as if he needs a lawyer because there's some issues that may have different consequences for him." The hearing and temporary PFS were again continued to July 14, 2016, at 9 a.m. in order to allow Riley time to retain an attorney.

On July 13, 2016, at 5:42 p.m., Danny Saville faxed his entry of appearance on behalf of Riley.

The hearing was reconvened on July 14, 2016. Kaster was present, again with Petty and her father, who had once again flown in from Florida to be present at the hearing. Riley appeared with his attorney.

2

Before Judge Foulston requested the parties enter their appearances, Saville told the court that he was just retained the evening before and he began to request a continuance. Judge Foulston interjected that she would not grant a continuance because all parties were present and because there had already been one continuance at Riley's request. Saville engaged in a discussion with the judge, reiterating that he just received the case the night before. Judge Foulston suggested Saville take Riley out of the courtroom and into the hallway if he needed more time with his client. After Judge Foulston asked the parties to enter their appearances, she summarized the allegations in the petition and then asked Saville to take Riley out of the courtroom and talk to him for 10 minutes.

After Judge Foulston told Riley directly that she would give him additional time with his attorney before commencing the hearing, Saville attempted again to request a continuance. Judge Foulston apologized to Saville for having been brought in late, at which point Saville interrupted her. Judge Foulston stated, "Let me talk, I'm the judge." She continued, "I'm sorry that you got into this late, but no, Mr. Riley had already been delayed, and justice delayed is justice denied for both parties." At that point, Judge Foulston, for the third time, told Saville to take his client and go talk for 10 minutes. Saville responded, "Sure. If I could—could I make a statement first, though, Your Honor?" The judge responded, "Sure." At that point Saville argued that Riley was served only one day before the previous hearing, which was 15 days before that day. Judge Foulston responded that Riley had "plenty of time to retain an attorney." Saville continued to argue by stating that the attorney Riley intended to hire was no longer licensed, which was a surprise to him. Judge Foulston again told Saville and Riley to go out into the hallway and talk for 10 minutes. Saville continued to argue:

> "MR. SAVILLE: But, if there was already—
> "THE COURT: No. No. No.
> "MR. SAVILLE: I can't even say anything?

3

"THE COURT: No. I'm just telling—giving you the order. Take your client. I'll give you five more minutes. I want you back here at 10:15.

"MR. SAVILLE: I can't even say—

"THE COURT: No, you can't. I'm not going to listen to this. I've already been here, done that.

"MR. SAVILLE: But I wasn't. I don't—I mean, it would—it's not—it's not—how am I able to prepare?

"THE COURT: What would you like for me to do?"

At that point, Saville stated he wanted to obtain a copy of the transcript from the June 30, 2016, proceeding so that he could be prepared. Judge Foulston told Saville what she recalled of that proceeding: basic information and that Riley did not want to testify. She stated, "So, there's not much on that transcript, but if you want it, you go ahead and get it . . . . But I'm not going to continue [the case]." Saville suggested that he was not trying to be an obstacle, and Judge Foulston agreed he was not. She concluded:

"Regarding your client, your client had an abundance of time to get an attorney. He begged me to give him time, and I did, because I felt he needed that time, and therefore, he—his—his denying and the delay is—is not going to happen in this courtroom. . . . Go anywhere you'd like in the courthouse, come back here at 10:15 and I will be happy to hear your case."

At that point, they went off the record at 9:56 a.m. and reconvened at 10:28 a.m. Judge Foulston asked Kaster if she had an extra copy of her petition for Saville. He indicated he had a copy of it. Saville indicated he had a minimal time to review the petition with Riley "since last night when he hired me on this."

Judge Foulston asked Kaster to tell the court the basis for her request for a PFS and about her relationship with Riley. The transcript reveals that Judge Foulston asked Kaster approximately a dozen questions over approximately seven pages regarding the allegations in Kaster's petition. At that point, Saville offered the court two aerial

4

photographs of Kaster's neighborhood, which were accepted into evidence. Saville then questioned Kaster for approximately 16 pages regarding the allegations. From time to time during Saville's questioning of Kaster, Judge Foulston would interject questions to clarify an answer from Kaster or a question from Saville. She also interjected to stop Riley from talking and to move Saville along. From time to time, Judge Foulston also admonished Kaster to clarify answers and to not interrupt. The record reflects that Judge Foulston conducted the hearing in this manner for each witness.

In one exchange between Saville and Judge Foulston, Saville asked Kaster about Petty's aunt in an independent living facility. Kaster replied that she did not understand the relevance of the question, and the judge interjected that she did not understand the relevance either. Judge Foulston asked Saville to explain the relevance to her:

"MR. SAVILLE:  Your Honor, can I—I can't even ask—
"THE COURT:  Excuse me.
"MR. SAVILLE:  —a question here?
"THE COURT:  No, Counsel.
"MR. SAVILLE:  I'm going over the dates and the allegations.
"THE COURT:  Counsel. Counsel, you know what are appropriate questions to ask. You know what the circumstances are here. We're talking about protection from stalking.
"MR. SAVILLE:  Can I proffer what it is that—
"THE COURT:  Why don't you proffer and then I'll decide if you can go on."

Saville proffered that Riley was near Kaster's house on the day in question because he was returning personal belongings to Petty after his aunt died in the living facility, and not for the sole intent of trying to see Kaster. Judge Foulston indicated she understood the proffer and suggested that information of Riley's innocent intent should be obtained from Riley.

At one point in Saville's questioning of Kaster, he began to ask her about Petty, but then turned to Judge Foulston to inquire if he could question Petty at that time. Judge Foulston told Saville he would need to wait until Petty was sworn in and suggested he reserve that question. Saville agreed.

Kaster's father then testified. Judge Foulston asked him questions pertaining to whether he assisted his daughter regarding any of the allegations in the petition and what he had done for her. In the course of his testimony, Judge Foulston admonished Kaster's father to answer the question asked and corrected him when he called the proceeding a trial, "This is a hearing, not a trial." Judge Foulston did not ask Saville if he wished to question Mr. Kaster, and Saville did not request the opportunity to question Mr. Kaster.

Judge Foulston then swore in Petty and questioned him about when he knew of the alleged incidents in Kaster's petition. Based on Petty's testimony, the judge acknowledged that there might be legitimate reasons for Riley to be in Kaster's neighborhood, and an interaction with Kaster might be coincidental. Saville examined Petty regarding his testimony about Riley being at his house next door to Kaster's during one of the alleged stalking events. Saville also questioned Petty about another event when Kaster called him for help when Riley was at her house. Judge Foulston did not interject during Saville's examination of Petty.

Saville indicated he wished to examine Riley. During his examination of Riley, Judge Foulston again interjected from time to time with questions of her own and suggestions for Saville.

At the conclusion of the hearing, Judge Foulston found that some of Kaster's allegations did not rise to the level of stalking, but several of them did. Judge Foulston made the temporary PFS final, set to expire on July 14, 2017.

6

Riley filed a motion for a new hearing, as well as a motion for recusal of Judge Foulston alleging issues consistent with those in his appeal brief. The motions were heard and denied by Judge Foulston in November 2016. Riley appealed the denial of his recusal motion to the chief judge of the district court. The chief judge heard Riley's appeal and likewise denied the motion to recuse Judge Foulston.

Riley timely appealed.

## DID RILEY ESTABLISH THAT THIS CASE IS NOT MOOT?

Initially it should be noted that the PFS expired in July 2017. It can be argued that this appeal is, therefore, moot. In Riley's response to a show-cause order, he claims there are collateral consequences for not addressing his issues on their merits.

Because mootness is a doctrine of court policy, which was developed through court precedent, appellate review of the issue is unlimited. *State v. Hilton*, 295 Kan. 845, 849, 286 P.3d 871 (2012). The mootness test has been described as a determination whether "it is clearly and convincingly shown the actual controversy has ended, the only judgment that could be entered would be ineffectual for any purpose, and it would not impact any of the parties' rights. [Citations omitted.]" *Wiechman v. Huddleston*, 304 Kan. 80, 84, 370 P.3d 1194 (2016).

A finding that a person is a stalker or involved in stalking behavior can have long-term consequences for that person. In any future protection from stalking cases or criminal cases incorporating such behavior, such a determination could have substantial impact on the court's perception of that person, charges that could be filed, or sentences that might be entered. As such, this matter is not moot as to Riley.

7

DID THE DISTRICT COURT VIOLATE RILEY'S DUE PROCESS RIGHTS BY FAILING TO TIMELY GRANT HIM A CONTINUANCE TO RETAIN COUNSEL?

Riley contends that his right to due process was violated when Judge Foulston declined to grant him a continuance when he first asked for one at the June 30, 2016, hearing. Under K.S.A. 2016 Supp. 60-240(b), a district court has the authority to "continue an action at any stage of the proceedings on just terms"; see also K.S.A. 2016 Supp. 60-31a05(c) ("If a hearing under subsection [a] is continued . . . ."). Appellate review turns on whether the district court abused its discretion in its ruling on the motion. See K.S.A. 2016 Supp. 60-240(c)(B)(3) (the granting or denial of a continuance "is discretionary in all cases"); *Miller v. Glacier Development Co.*, 284 Kan. 476, 494, 161 P.3d 730 (2007).

A judicial action constitutes an abuse of discretion if (1) no reasonable person would take the view adopted by the trial court; (2) it is based on an error of law; or (3) it is based on an error of fact. *Wiles v. American Family Assurance Co.*, 302 Kan. 66, 74, 350 P.3d 1071 (2015). An abuse of discretion occurs if discretion is guided by an erroneous legal conclusion or goes outside the framework of or fails to consider proper statutory limitations or legal standards. *Matson v. Kansas Dept. of Corrections*, 301 Kan. 654, 656, 346 P.3d 327 (2015). The party asserting the trial court abused its discretion bears the burden of showing such abuse of discretion. *Northern Natural Gas Co. v. ONEOK Field Services Co.*, 296 Kan. 906, 935, 296 P.3d 1106, *cert. denied* 134 S. Ct. 162 (2013).

Courts must take all circumstances into account when ruling on a motion for continuance, including the applicant's good faith, the applicant's showing of due diligence, and the lawsuit's timetable. *In re J.A.H.*, 285 Kan. 375, 385, 172 P.3d 1 (2007). When a constitutional or a statutory right is involved, the discretion of the district court is limited. Under those circumstances, there is a greater need for the trial judge to articulate

8

the reasons for any discretionary decision. *State v. Gant*, 288 Kan. 76, 82, 201 P.3d 673 (2009), *abrogated on other grounds by State v. Sampson*, 297 Kan. 288, 299-300, 301 P.3d 276 (2013); *Landmark Nat'l Bank v. Kesler*, 289 Kan. 528, 544, 216 P.3d 158 (2009).

Riley claims that the district court initially denied his request on June 30, 2016, for a continuance so that he could retain an attorney. He contends the district court violated his right to due process because, after denying his request for time to retain an attorney, it took testimony from three witnesses. It was not until the end of the proceeding, after Riley begged for time to retain an attorney, that the district court granted his request for a continuance. Riley claims that the record is "replete with statements and acknowledgements by the judge" that the June proceeding unfolded as he describes. It must be noted that Riley appeals only the issue of granting of a continuance at the June hearing. Riley does not appeal the denial of a request for continuance made at any other hearing.

Protection from stalking proceedings are civil in nature. See *Walker v. Brizendine*, No. 114,776, 2016 WL 5012505, at *3 (Kan. App. 2016) (unpublished opinion); Protection from Stalking Act, K.S.A. 2016 Supp. 60-31a01 et seq. Pursuant to K.S.A. 2016 Supp. 60-31a05(a), both parties in a PFS proceeding shall be informed of their right to be represented by counsel. Riley does not allege that he was not informed of his right to counsel. Riley acknowledges that he was informed of his right to counsel but contends that the right to counsel is meaningless if he was not allowed to retain counsel before proceeding with the PFS hearing.

Nevertheless, Riley attempts to demonstrate that Judge Foulston denied his initial request for a continuance to retain an attorney on June 30, 2016, and then did not decide to grant his request until essentially after Kaster completed her case in chief. Riley argues

9

that this is evidence of Judge Foulston's abuse of discretion in attempting to deny him his right to counsel.

The transcript from the June 30, 2016, proceeding is not part of the record on appeal. The record demonstrates that a technical problem prohibited the preparation of a transcript from the June 30, 2016, hearing. However, when a transcript from a hearing is unavailable, a party to an appeal may prepare a statement of the proceeding from the best available means—including the party's own recollection—for use instead of a transcript. However, that statement must be served on all parties for objection or proposed amendment. The statement and any objections or proposed amendments must then be submitted to the district court for settlement and approval. Kansas Supreme Court Rule 3.04(a) (2017 Kan. S. Ct. R. 23). There is nothing in the record on appeal to show that Riley attempted to recreate the transcript or prepare a statement in accordance with this rule so that an accurate account of the June 30, 2016, hearing would be available. The burden is on the party making a claim to designate facts in the record to support that claim; without such a record, the claim of error fails. *Friedman v. Kansas State Bd. of Healing Arts*, 296 Kan. 636, 644-45, 294 P.3d 287 (2013).

In an effort to establish the events of June 30, 2016, Riley cites to a portion of the November 3, 2016, hearing on his motion for a new hearing. In that excerpt, Riley's attorney, Saville, attempted to recreate a timeline of events from the June hearing. Saville, who was not present at the June hearing, argued for a new hearing on the PFS, claiming that Riley was denied the opportunity to retain counsel at that proceeding. Obviously, Saville's recitation of the facts can only be based on what his client related to him. Speaking to Judge Foulston at the November proceeding, Saville asserted that:  the June hearing was continued only after the testimony of three witnesses and an initial denial of Riley's request for a continuance; at the July 14, 2016, proceeding the judge said she granted the continuance because Riley begged her for more time; and, initially, the

10

continuance was going to be for one week instead of two. Judge Foulston replied, "I understand that. I recall."

Riley frames Judge Foulston's response as an agreement of his interpretation of the events as they unfolded on June 30, 2016. However, in the context of this transcript, and the record as a whole, it is not clear which portion of Saville's narrative Judge Foulston agreed with: that she initially denied his request for a continuance; that she took testimony from three witnesses; the summary of what she said at the July 14, 2016, proceeding; that she initially only intended for Riley to have a one-week continuance; or a general understanding of Saville's argument and a recollection of portions or all of it. Regardless, the available record does not demonstrate that events at the June 30, 2016, proceeding unfolded in this way.

The available record does not indicate how long the June hearing lasted. It does not indicate at what point Riley requested time to retain an attorney, if he made the request before or after he participated to a degree, or if he made the request more than once. The record does not reflect that the district court denied his request for a continuance at the beginning of the hearing, only to grant it at the end, nor does the record reflect that district court ever denied Riley's request. Riley's characterization of key events in his appellate brief is not supported by the record on appeal. Without a complete record, this court cannot resolve this issue.

DID RILEY ESTABLISH THAT JUDGE NOLA FOULSTON WAS BIASED?

Riley contends that Judge Foulston was biased and prejudiced against him because her failure to grant his initial request for a continuance to retain an attorney "was a breech [*sic*] of the statutory right to counsel and a breech [*sic*] of [his] right of Due Process to have a fair trial." In support of this argument, Riley also claims:  (1) Judge Foulston took testimony while he was without the benefit of counsel; (2) Judge Foulston acted as

11

counsel on behalf of Kaster; (3) Judge Foulston misstated the facts of the case in her assessment of Riley's motion to amend; and (4) Judge Foulston was unprofessional in her interactions with Saville.

Appellate courts have unlimited review over allegations of judicial misconduct. *State v. Moyer*, 302 Kan. 892, 920, 360 P.3d 384 (2015) (unlimited review over whether a trial court judge's recusal is required); *State v. Robinson*, 293 Kan. 1002, 1032, 270 P.3d 1183 (2012) (unlimited review in evaluating an affidavit in support of a motion for recusal filed under K.S.A. 20-311d).

There are three substantive bases on which a litigant may argue that a judge's recusal is required: (1) based on the statutory factors set forth in K.S.A. 20-311d(c); (2) based upon the standards of the Code of Judicial Conduct; and (3) based on the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *Moyer*, 302 Kan. at 920. See generally Kansas Code of Judicial Conduct (2017 Kan. S. Ct. R. 425-496) (canons, rules, and comments guiding judge's conduct after March 1, 2009).

An appellate court must review the particular facts and circumstances of each case to determine whether judicial comments, other than jury instructions, rise to the level of judicial misconduct. If a proper and reasonable interpretation will render the judge's remark unobjectionable, the remark cannot be found to be prejudicial. *State v. Kemble*, 291 Kan. 109, 113, 238 P.3d 251 (2010). The "[m]ere possibility of prejudice from a judge's remark is not sufficient to overturn a verdict or judgment." *State v. Miller*, 274 Kan. 113, 118, 49 P.3d 458 (2002). The party alleging judicial misconduct bears the burden of establishing that misconduct occurred and that the misconduct prejudiced the party's substantial rights. *State v. Hudgins*, 301 Kan. 629, 637-38, 346 P.3d 1062 (2015).

12

Having already resolved the issues of Riley's request for a continuance and whether the district court heard testimony on June 30, 2016, we address the remaining issues raised by Riley.

In the reading of the transcripts from the remaining hearings, it is clear that Judge Foulston took a very aggressive attitude toward Riley and his counsel. Saville requested a continuance of the July hearing based on the fact that he had been hired less than 24 hours before the hearing. As Saville tried to make his argument, he was told there would be no continuance and that he had 15 minutes to talk with his client in the hallway. When counsel attempted to proceed with his argument Judge Foulston stated, "No. No. No." When asked if he could say anything, he was told no. When Saville tried to ask again, "I can't even say—" he was interrupted and was told, "No, you can't."

A judge certainly has discretion in granting a continuance, but this court exaggerated the facts in making its ruling. The court stated that the case had "been continued quite a bit." The case had, in fact, been continued once after Riley had been served and appeared in court. The court stated that the case had been continued for "weeks and weeks." The case had been continued two weeks and one of those weeks was due to the trial judge not having room on her calendar to hear the case. The statement was made that Riley "failed, refused and neglected" to hire an attorney during the two-week continuance and that when someone "dallies, or dilly dallies around, it's not [the court's] problem." The record on appeal indicates that Riley had taken steps to hire an attorney that he had previously used but he was unaware that his license had been revoked.

Judge Foulston conducted the direct examination of the witnesses and repeatedly cut off Saville's questions and his lines on inquiry. Repeatedly, Judge Foulston essentially ruled on objections to counsel's questions when no objection had been made.

It also appears that the judge misstated the law in ruling on Riley's motion for recusal. After denying the recusal, a discussion was begun about seeking a ruling from the chief judge, which the judge cut off. Judge Foulston stated that Riley "had the ability to take this case and file a motion with the Court of Appeals. That is where these cases go. You do not have the right seek out a different judge or a different opinion with the same district court." This statement is not true if a party seeks to have a judge recused and is successful.

It also is disconcerting that there is an indication that the judge may have "prejudged" the case. In discussing her reasoning concerning her denial of a continuance she made the comment that Riley "was putting off the inevitable by machinations of trying to secure additional time."

In making her ruling concerning the continuance, the judge relied heavily on her belief that her job was "to protect victims." While true, it is every judge's obligation to insure that every party receive a fair hearing.

A judge is not only a moderator of a hearing. In a bench trial or hearing, a judge is also a finder of fact. The judge should endeavor to conduct the trial in an atmosphere of impartiality and, therefore, should refrain from remarks or conduct that may injure a litigant. The judge should be the exemplar of dignity and impartiality, should exercise restraint over personal conduct and statements, should avoid personal predilections, and should control personal emotions. The judge should not permit any person in the courtroom to embroil him or her in conflict. The judge should avoid behavior that tends to demean the proceedings or to undermine the judge's authority. When it becomes necessary during the trial to comment upon the conduct of witnesses, spectators, counsel, or others, or upon the testimony, those comments should be made in a firm, dignified, and restrained manner, avoiding repartee. The judge's comments and rulings should be limited to what is reasonably required for the orderly progress of the trial and should

14

refrain from unnecessary disparagement of persons or issues. *State v. Hayden*, 281 Kan. 112, 125, 130 P.3d 24 (2006).

While it appears that Judge Foulston was aggressive, rigid, and intolerant in some respects, such observations do not determine if she was biased. We must determine whether such an approach to the hearing caused substantial prejudice to Riley's rights. Since it has already been determined that we cannot review the events of the June 30, 2016, hearing, we can only base our determination on subsequent hearings.

The critical hearing in this case occurred July 14, 2016. At this hearing, Kaster and several other witnesses testified. Riley's counsel questioned those witnesses. In one instance where the judge interrupted counsel's questioning and another when Riley wished to call a witness that was unavailable, counsel was permitted to make proffers. The judge accepted those proffers as true without objection from opposing counsel. Riley makes no argument that he wished to present additional evidence. When Judge Foulston made her decision, she referred to specific facts elicited from the testimony. Her decision was supported by the evidence and was not based on any apparent prejudices.

Based on the foregoing, it cannot be said Riley's substantial rights were prejudiced.

### DID RILEY ESTABLISH THAT HE COULD NOT REASONABLY AND OBJECTIVELY OBTAIN A FAIR HEARING WITH JUDGE NOLA FOULSTON?

Riley contends that Judge Foulston had a duty to recuse herself from post-hearing motions. Saville provided an affidavit to the chief judge of the district court in support of Riley's motion for recusal. When reviewing the legal sufficiency of an affidavit in support of a motion for a change of judge, the appellate court must decide the sufficiency of the affidavit, not the truth of the facts alleged. The appellate court should determine

15

whether the affidavit provides facts and reasons pertaining to the party or the attorney which, if true, give fair support for a well-grounded belief that the defendant will not obtain a fair trial with the assigned judge and the charges are grounded in facts that would create reasonable doubt concerning the judge's impartiality based on an objective standard of a reasonable person. *Robinson*, 293 Kan. at 1032.

Saville's affidavit is not part of the record on appeal. Again, the burden is on the party making a claim to designate facts in the record to support that claim; without such a record, the claim of error fails. *Friedman*, 296 Kan. at 644-45.

Having resolved the first and second issues against Riley and finding there was no established bias, Riley fails to meet his burden on the merits here to establish the chief judge of the district court erred in not recusing Judge Foulston.

Affirmed.